[No. B052892. Second Dist., Div. Five. Mar. 11, 1992.]

ALFREDO MONTEZ, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Gary M. Mandinach for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Robert W. Carney, Deputy District Attorneys, for Real Party in Interest.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Petitioner Alfredo Montez (defendant) seeks a writ of prohibition directing the respondent court to set aside an order denying a motion to dismiss pursuant to Penal Code section 995.[1] ▆▆ ■ ■ The motion raised several issues concerning the application of Proposition 115 which was

---

[1]Unless otherwise indicated, all future statutory references are to the Penal Code.

adopted by the voters on June 5, 1990, and which went into effect on June 6, 1990.[2] Because the respondent court incorrectly denied the dismissal motion, the petition is granted.

## II. PROCEDURAL AND FACTUAL MATTERS

Defendant is charged in an information with residential burglary in violation of sections 459 and 462, subdivision (a). The sole witness who testified at the preliminary examination was Detective Eugene Akesson of the Los Angeles Police Department. Detective Akesson was a burglary investigator and had been a police officer for 22 years. As part of his duties "[a]s a burglary detective" he investigated the incident which gave rise to the filing of the complaint. When he testified, Detective Akesson read from an arrest report prepared by an Officer Reems, who had been a police officer for two years. The report was prepared with the assistance of an Officer Granillo. As part of his investigation, Detective Akesson wrote a report. The arrest report, which was marked People's exhibit one, contained the circumstances concerning defendant's arrest along with that of the codefendant Ernesto Rosales on June 17, 1990, shortly after the commission of a burglary on that date. As part of his investigation, Detective Akesson interviewed defendant and the codefendant Rosales in "our jail." Defendant and his accomplice were booked in the jail where the interview occurred under the same booking number as appeared in the arrest report, People's exhibit one, which was in the courtroom. Detective Akesson's testimony was based upon the various written police reports and his interview with defendant and the codefendant Rosales.

The report indicated that an eyewitness, Martha Turchious, saw defendant and the codefendant Rosales knocking on doors of an apartment building where she resided at 1634 6/8 Arapahoe Street in Los Angeles. Defendant

---

[2]In the motion filed in the superior court, defendant presented a series of arguments concerning Proposition 115 which were not raised before the magistrate in municipal court. For example, defendant, in his written dismissal motion filed pursuant to section 995, contended that those portions of Proposition 115 which permitted the use of hearsay evidence under certain circumstances violated the doctrine of separation of powers, a defendant's right to equal protection of the laws, article I, section 28 of the California Constitution, as well as section 865. Additionally, defendant argued that when coupled with the limitations on prepreliminary hearing discovery (§ 1054 et seq.) the preliminary hearing process was a "sham." Because these contentions were not presented before the magistrate, they could not be raised for the first time in superior court in a dismissal motion pursuant to section 995. (*Robison* v. *Superior Court* (1957) 49 Cal.2d 186, 187-188 [316 P.2d 1]; *People* v. *Schultz* (1968) 263 Cal.App.2d 110, 113 [69 Cal.Rptr. 293]; *People* v. *McFarren* (1957) 155 Cal.App.2d 383, 384 [317 P.2d 998].) Defendant raises additional contentions in his petition for writ of prohibition which were not argued in the dismissal motion in superior court; those claims cannot now be raised. (*People* v. *Brice* (1982) 130 Cal.App.3d 201, 211 [181 Cal.Rptr. 518].)

and his accomplice attempted to open doors to the apartments. When either defendant or the codefendant Rosales knocked on her door, one of them asked "for a fictitious person." Ms. Turchious refused to open the front door and saw that the front door of a neighbor, Erma Dubon, was closed. Approximately two to five minutes after defendant and the codefendant Rosales left her front door, she saw that the door to the apartment belonging to Ms. Dubon was open. Ms. Turchious then telephoned the police and gave a description of the two burglars. A police helicopter arrived near Ms. Dubon's apartment and defendant and the codefendant were observed "immediately outside of the apartment." Defendant was observed by the occupants of the police helicopter to be holding a radio while the codefendant was holding a bag which later was discovered to contain a video cassette recorder (VCR). The officers in the police helicopter saw defendant and the codefendant drop "the property" in the rear of the apartment complex.

The occupant of the apartment that was broken into, Ms. Dubon, telephoned Officer Reems two hours after defendant's arrest. She told Officer Reems that she had locked the door to her apartment when she left for work on the morning of the incident. When she returned later in the day on June 17, 1990, a Sanyo radio and a Fisher VCR were gone. The two items dropped by the defendant and the codefendant outside the apartment complex, which were observed by the officers in the helicopter, were a Sanyo radio and a Fisher VCR. Officer Reems and Officer Granillo looked at Ms. Dubon's door and saw "pry marks." Ms. Turchious was asked by police officers to identify defendant and the codefendant. She stated that they were the persons who had broken into the apartment.

When cross-examined, Detective Akesson stated that he had never interviewed the victim, Ms. Dubon, or the eyewitness, Ms. Turchious, nor had he "gone" to the scene of the incident. His testimony on direct examination was based entirely upon the arrest report and his interviews with defendant and the codefendant. Also, he testified that the officers in the helicopter were "never asked to make an identification of any suspects in custody." Detective Akesson had not received any fingerprint lifts from inside Ms. Dubon's apartment. Also, Detective Akesson had not "checked" to determine if Ms. Dubon had "any type of felony convictions" because an effort to verify whether a burglary victim has a prior criminal record was "not a routine check." Also, the report did not indicate the circumstances under which Ms. Turchious identified defendant and the codefendant.

The magistrate conducted a brief examination of Detective Akesson. The magistrate inquired as to precisely what Ms. Turchious told Officer Reems who prepared the report and the detective responded as follows: "She

reported that after—she reported that after the defendants left her door, she was preoccupied for approximately two minutes with her own duties, went out to the front door of her apartment and observed the front door of her neighbor's apartment, [Ms.] Dubon, to be open. The door was open. Whereas prior to the visit of these two defendants, the door had been closed." Additionally, when subjected to examination by the magistrate, Detective Akesson stated that Officer Reems had two years' experience as a police officer. During a brief redirect examination, Detective Akesson, in response to the prosecutor's question, stated that Officers Reems and Granillo worked "day watch" and were "approximately halfway through their eight-hour shift" at the time of the arrests.

After the redirect examination, defendant's attorney conducted further cross-examination. Detective Akesson admitted that he did not know where Ms. Turchious was at the time of the preliminary examination. The report did not indicate "whether an admonishment was given prior to the identification" by Ms. Turchious. The report likewise did not state the circumstances under which Ms. Turchious made the identification. The report related that she said in reference to defendant and the codefendant: "Those were the same ones that knocked on my door and I seen the front of that house." Officer Reems's report indicated Ms. Turchious was referring to defendant and the codefendant Rosales. No effort was made to take fingerprint lifts to verify whether defendant and the codefendant touched the radio and the VCR.

The magistrate held defendant to answer in superior court on a single charge of residential first degree burglary. (§§ 459, 460.) A timely motion to dismiss pursuant to section 995 was filed and denied. The present petition for writ of prohibition was then filed and we issued a stay order so as to allow us to hear oral argument and to reach the merits of the petition. (*Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1024-1025 [269 Cal.Rptr. 720, 791 P.2d 290].) We issued a published opinion. Our Supreme Court granted review and, on January 30, 1992, transferred the case to this court with directions to issue an alternative writ of prohibition and to consider the merits of the petition in light of *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262].

### III.  DISCUSSION

#### A.  *Standard of review*

The issue in the present case relates to the admissibility of evidence. ■ The standard of review for both this court, and the superior court in

passing upon evidentiary rulings by a magistrate conducting a preliminary examination is as follows: "Accordingly, it is settled that in ruling on a motion under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence that on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence. [Citation.] By contrast, in proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer. [Citation.]" (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

In varying circumstances, appellate courts have applied the abuse of discretion standard in reviewing a trial judge's determinations to admit hearsay evidence when there was conflicting inferences and evidence concerning questions of trustworthiness of hearsay declarations or the existence of elements of a hearsay rule exception. (*People* v. *Edwards* (1991) 54 Cal.3d 787, 820 [1 Cal.Rptr.2d 696, 819 P.2d 436] [finding of trustworthiness for physical or mental state exception to the hearsay rule (Evid. Code, §§ 1250-1252) subject to abuse of discretion standard of review]; *People* v. *Frierson* (1991) 53 Cal. 3d 730, 744-745 [280 Cal.Rptr. 440, 808 P.2d 1197] [trustworthiness finding by superior court in declining to admit declaration against interest (Evid. Code, § 1230) reviewed under abuse of discretion rule]; *People* v. *Gordon* (1990) 50 Cal.3d 1223, 1250-1251 [270 Cal.Rptr. 451, 792 P.2d 251] [abuse of discretion standard applies to trustworthiness finding concerning declaration against penal interest noting that the Legislature intended to entrust the issue of admissibility of declarations-against-interest evidence and principal question of trustworthiness to trial court's sound discretion]; *People* v. *Enriquez* (1977) 19 Cal.3d 221, 235 [137 Cal.Rptr. 171, 561 P.2d 261, 3 A.L.R.4th 73] [ruling by trial court that due diligence was exercised to secure the attendance of an unavailable witness as a precondition to the admissibility of prior recorded testimony (Evid. Code, §§ 240, 1292, subd. (a)(1)) not to be reversed in the absence of an abuse of discretion]; *People* v. *Tahl* (1967) 65 Cal.2d 719, 725 [56 Cal.Rptr. 318, 423 P.2d 246] [abuse of discretion standard to be applied to the issue of whether a hearsay declaration was made under a sense of impending death as required by former Code Civ. Proc., § 1870, subdivision 4, repealed (Stats. 1965, ch. 299, § 58, p. 1360) and reenacted as Evid. Code, § 1242]; *In re*

*Troy D.* (1989) 215 Cal.App.3d 889, 902-905 [263 Cal.Rptr. 869] [presence of sufficient foundation for business records exception to hearsay rule (Evid. Code, § 1271) not to be disturbed on appeal unless there is an abuse of discretion]; *People v. Martin* (1983) 150 Cal.App.3d 148, 162 [197 Cal.Rptr. 655] [trial court's resolution of admissibility of declaration against penal interest exception to the hearsay rule (Evid. Code, § 1230) upheld under abuse of discretion standard of review when evidence of untrustworthiness present]; *People v. Francis* (1982) 129 Cal.App.3d 241, 253-254 [180 Cal.Rptr. 873] [abuse of discretion standard applied to trial court's finding that declaration made under sufficient stress to qualify for admissibility under the excited utterance provisions of the hearsay rule (Evid. Code, § 1240)]; *People v. Sherman* (1956) 139 Cal.App.2d 429, 431 [293 P.2d 809] [trial court did not abuse its discretion in excluding a physician's report on hearsay and relevance grounds].) Under certain circumstances, appellate courts can conduct independent review of certain questions concerning mixed issues of law and fact and pure issues of law. (*People v. Louis* (1986) 42 Cal.3d 969, 984-988 [232 Cal.Rptr. 110, 728 P.2d 180].)

### B. *Admissibility of testimony consisting of multiple hearsay*

■ Defendant argues that even if Detective Akesson was properly qualified to offer hearsay testimony, he could not offer so-called "double or multiple hearsay." (*Whitman v. Superior Court, supra,* 54 Cal.3d at p. 1074.) At the preliminary hearing, the prosecutor argued that the provisions of the initiative allow for multiple level hearsay. The argument supporting the prosecution's contention is as follows: The rule restricting the use of hearsay is found in Evidence Code section 1200, subdivision (b) which states, "Except as provided by law, hearsay evidence is inadmissible." The exceptions to the hearsay rule are extensive. They are codified in Evidence Code sections 1220-1350. Other exceptions include permitting the use of social study reports in proceedings to terminate the parent-child relationship (Civ. Code, § 233; *In re Rose G.* (1976) 57 Cal.App.3d 406, 426 [129 Cal.Rptr. 338]) as well as dependency proceedings (Welf. & Inst. Code, §§ 281, 355; *In re Malinda S.* (1990) 51 Cal.3d 368, 372-373 [272 Cal.Rptr. 787, 795 P.2d 1244]) and probation reports which are admissible at criminal sentencing proceedings (§ 1203, subd. (b); *People v. Lockwood* (1967) 253 Cal.App.2d 75, 81 [61 Cal.Rptr. 131].) The provisions of law allowing for the use of social studies as evidence contemplate the fact that multiple levels of hearsay may be present in those reports. (*In re George G.* (1977) 68 Cal.App.3d 146, 155-156 [137 Cal.Rptr. 201]; *In re Rose G., supra,* 57 Cal.App.3d at p. 426.) Further, the provisions of Proposition 115 which permit the use of hearsay at preliminary hearings by a properly qualified law enforcement officer are but another exception to the hearsay rule. The

language "[e]xcept as provided by law" contained in Evidence Code section 1200, subdivision (b) now has another exception contained in article I, section 30, subdivision (b) of the state Constitution and section 872, subdivision (b) as well as Evidence Code section 1203.1. Nothing in the language of article I, section 30, subdivision (b), of the California Constitution, section 872, subdivision (b), or Evidence Code section 1203.1 indicates that only so-called "first level hearsay" is admissible at the preliminary examination. The voters did not approve an initiative containing language which contains limitations on the use of multiple level hearsay. Article I, section 30, subdivision (b) of the California Constitution states, "[H]earsay evidence shall be admissible at preliminary hearings" while section 872, subdivision (b) provides, "[T]he finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating to the statements of declarants made out of court offered for the truth of the matter asserted." Evidence Code section 135 very broadly defines a declarant as "a person who makes a statement." Evidence Code section 1203.1 provides that Evidence Code section 1203, the hearsay rule, "is not applicable if the hearsay statement is offered at a preliminary examination." Because there is no vagueness of the language of the initiative relative to the use of hearsay, judicial construction of the relevant portions of Proposition 115 is unnecessary. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 800 [268 Cal.Rptr. 753, 789 P.2d 934].) Even if judicial construction was necessary, the use of multiple level hearsay by a properly qualified investigating officer does not contravene the underlying purposes of the initiative.

Nonetheless, we agree with defendant that our Supreme Court's decision in *Whitman* v. *Superior Court, supra,* 54 Cal.3d at page 1074 resolves the question of the admissibility of multiple level hearsay in an entirely different fashion. The court held: "Moreover, to allow testimony by noninvestigating officers or readers would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115. (See Evid. Code, § 1201 [multiple hearsay admissible only if each hearsay statement admissible under hearsay rule exception].) Although such multiple hearsay was not present in this case, we doubt that Proposition 115 was intended to sanction a procedure whereby a noninvestigating officer, lacking any personal knowledge of the matter, nonetheless would be permitted to relate not only what the investigating officer told him, but also what the other witnesses told the investigating officer. It is noteworthy that although Proposition 115 created an exception to the basic hearsay rule contained in Evidence Code section 1200 (see new Pen. Code, § 872, subd. (b)), the measure does not purport to create a similar exception for the multiple hearsay rule of Evidence Code section 1201. [¶] In addition, an interpretation of Proposition 115 that would allow 'reader' or multiple

hearsay testimony would raise constitutional questions that we can and should avoid by limiting admissible hearsay testimony to testimony by qualified investigative officers. (See, e.g., *People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667P. 2d 149] [construing Prop. 8, 'The Victims' Bill of Rights' initiative measure, to avoid constitutional doubts].) As discussed below, we believe that the latter, more limited form of hearsay evidence satisfies federal requirements of *reliability* (see *Ohio* v. *Roberts* (1980) 448 U.S. 56, 63-65 [65 L.Ed.2d 597, 605-607, 100 S.Ct. 2531]), and thus properly may be admitted at preliminary hearings despite the defendant's inability to confront and cross-examine the declarant witness or victim. But substantial additional objections to the reliability of the evidence might arise if multiple hearsay were involved, and the defendant were also deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the circumstances under which the out-of-court statement was made." (*Ibid.*, original italics.) Given the foregoing language in *Whitman*, we conclude that multiple level hearsay is inadmissible at a preliminary examination even when offered by an otherwise qualified investigating officer.

Accordingly, we respectfully determine that the magistrate erroneously overruled the specific objection articulated by defense counsel at the preliminary examination to the multiple level hearsay in the present case. All of the statements related to Officer Reems by Ms. Turchious and Ms. Dubon were inadmissible. These hearsay declarations were essential to a finding that probable cause existed to believe defendant was a burglar. As a result, the magistrate should not have held the defendant to answer in superior court and the motion to dismiss should have been granted.

## IV. DISPOSITION

The petition for writ of prohibition is granted and the superior court is directed to dismiss the information.

Boren, J., and Grignon, J., concurred.

A petition for a rehearing was denied March 31, 1992, and the petition of real party in interest for review by the Supreme Court was denied May 28, 1992.