[No. B057574. Second Dist., Div. Seven. Apr. 9, 1992.]

THE PEOPLE, Plaintiff and Appellant, v.
STEVEN WIMBERLY, Defendant and Respondent.

**COUNSEL**

Ira Reiner, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**WOODS (Fred), J.**—Dispositive of this appeal are two related Proposition 115[1] preliminary hearing issues: (1) was the officer who testified to hearsay statements qualified to do so and (2) were those multiple hearsay statements admissible pursuant to Penal Code[2] section 872, subdivision (b)? We conclude that under *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262] the officer was section 872, subdivision (b) qualified but the multiple hearsay statements he testified to were inadmissible. Accordingly, we affirm the order (§ 995) setting aside the information.

### FACTUAL AND PROCEDURAL BACKGROUND

The district attorney charged respondent with committing a July 9, 1990, residential burglary (§ 459; count I), and a contemporaneous grand theft (§ 487, subd. 1; count II). At the October 5, 1990, preliminary hearing[3] the district attorney called a single witness, Detective Osman, a 12-year City of Monterey Park police officer.

Over objection,[4] Detective Osman testified that the day after the burglary he did "a follow-up investigation," namely, he talked to the victim, read the crime report, and talked to its author, Officer Yahn. Detective Osman further testified to the victim's statements, his testimony apparently based upon his conversation with the victim rather than upon Officer Yahn's report. This part of Detective Osman's testimony established the corpus of both charged offenses but did not link respondent to either crime. To establish that link the district attorney elicited from Detective Osman the statements of a Mr. Schiro, someone Detective Osman had *not* spoken to. Mr. Schiro was the manager of the apartment complex in which the victim lived. Mr. Schiro had spoken to Officer Yahn and Officer Yahn included Mr. Schiro's statements in his crime report.

Detective Osman testified[5] that "*according to Officer Yahn*, Mr. Schiro stated," in substance, that on the day of the burglary respondent asked to be let into the victim's apartment and that he, Mr. Schiro, unlocked the door for respondent because respondent was the victim's brother.

---

[1]An initiative measure adopted June 5, 1990.

[2]Unless otherwise noted, all statutory references are to the Penal Code.

[3]The record elliptically refers to an earlier, not completed, preliminary hearing. It is not pertinent to this appeal.

[4]Appellant makes no claim of inadequate "timely and specific" hearsay objections (Evid. Code, § 353) by respondent. Accordingly, we treat respondent's objections as adequate.

[5]It is unclear whether Detective Osman's testimony was based upon Officer Yahn's report, his conversation with Officer Yahn, or both.

The magistrate held respondent to answer on both counts. In superior court, respondent's section 995 motion to set aside the information was granted.

DISCUSSION

█ In reviewing the superior court order granting respondent's section 995 motion, we are concerned with the correctness of, not the reasons for, the order. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

If the magistrate erred in permitting Detective Osman to testify to *either* the statements of the victim *or* the statements of Mr. Schiro, then the order setting aside the information was correct and must be affirmed.

The magistrate relied upon section 872, subdivision (b), enacted as part of Proposition 115. This section provides: "Notwithstanding Section 1200 of the Evidence Code [the hearsay rule], the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."

By its terms, this statute creates a special hearsay exception applicable only at preliminary hearings. To determine whether or not hearsay statements were properly admitted under section 872, subdivision (b), two questions must be addressed: first, was the testifying officer qualified; second, if qualified, were the hearsay statements admissible?

1. *Was Detective Osman qualified?*

█ Because Detective Osman had been a City of Monterey Park police officer for 12 years he satisfied the threshold requirement of section 872, subdivision (b): "Any law enforcement officer testifying as to hearsay statements shall . . . have five years of law enforcement experience. . . ." As *Whitman* makes clear, five years' law enforcement experience is a necessary but insufficient qualification. Officer Alexander, the testifying officer in *Whitman*, had eight years' experience but was unqualified.

But *Whitman* makes less clear just what, in addition to five years' experience, constitutes section 872, subdivision (b) *officer qualification*.

Officer Alexander illustrates what constitutes *nonqualification*. "Proposition 115 does not authorize a finding of probable cause based on the testimony of a noninvestigating officer or 'reader' merely reciting the police report of an investigating officer." (*Whitman* v. *Superior Court, supra,* 54 Cal.3d 1063, 1072.) Officer Alexander was unqualified, *Whitman* states, because he was merely a "reader," an officer who had no involvement with the case before the preliminary hearing and whose information came only from the report he "read." Officer Alexander, in *Whitman* terminology, was a "noninvestigating officer."

*Whitman* further states: "We believe the probable intent of the framers of the measure was to allow *a properly qualified investigating officer* to relate out-of-court statements by crime victims or witnesses, including other law enforcement personnel, without requiring the victims' or witnesses' presence in court. *The testifying officer,* however, must not be a mere reader but *must have sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement.*" (54 Cal.3d at pp. 1072-1073. Italics added.)

Thus, to be qualified, the testifying officer must be an *investigating* officer, "a properly qualified investigating officer."

But what is an "investigating officer"? *Whitman* does not define the term and we are unaware of any accepted, useful definition. Certainly, to merely say it is *an officer who investigates* is circular and unhelpful. In practice, the term has almost as many meanings as there are law enforcement agencies which use it.

An investigating officer may be a Colombo-like homicide detective who studies the crime scene, personally and repeatedly interrogates witnesses and possible witnesses, conducts lineups, questions suspects, requests and coordinates scientific studies, and gathers sufficient admissible evidence for a prosecution. But an investigating officer may also be little more than a bureaucratic paper shuffler, a veteran officer who collects police reports— crime report, arrest report, evidence report, perhaps a follow-up report— determines if they are sufficient for prosecution, and if so, presents them to the prosecutor.

Although not defining "investigating officer" *Whitman* does provide an example of one. The officer who saw the crime being committed (driving under the influence of alcohol and/or drugs) and arrested its perpetrator is characterized as "an investigating officer." (54 Cal.3d at p. 1072.) *Whitman*

further suggests that one may be an investigating officer by having "sufficient knowledge of the crime *or* the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (*Id.* at pp. 1072-1073. Italics added.)

We conclude that Detective Osman satisfied the *Whitman* requirements. He was not a mere "reader." In a relatively simple burglary case he personally interviewed the victim, the officer who took the crime report (Officer Yahn), and the defendant's parole officer. We hold that Officer Osman was a "properly qualified investigating officer."

## 2. *Was Detective Osman's testimony relating the victim's statements properly admitted?*

■ Detective Osman testified that he had personally talked to the victim the day after the burglary. The victim, Detective Osman testified, stated that on July 9, 1990, he left his locked residence at 6 a.m. and upon returning at 4:15 p.m. discovered about $3,000 worth of jewelry missing. He had not given permission to anyone to enter his house or take his property.

We are satisfied that these victim-hearsay statements were properly admitted by the magistrate. Detective Osman, having personally interviewed the victim, had "sufficient knowledge of . . . the circumstances under which the . . . statement[s] [were] made so as to meaningfully assist the magistrate in assessing the reliability of the statements." (54 Cal.3d at pp. 1072-1073.)

In fact, as is common with burglary victims, the magistrate required little if any assistance to assess the reliability of the victim-statements. Defense counsel, who cross-examined Detective Osman on other aspects of his testimony, asked no questions about the victim-statements.

## 3. *Was Detective Osman's testimony relating Mr. Schiro's statements properly admitted?*

Detective Osman testified to what Officer Yahn stated (in his report) that Mr. Schiro stated. Unlike his victim-statement testimony, this testimony was double hearsay. Detective Osman, not having spoken to Mr. Schiro, was not "capable of using his . . . experience and expertise to assess the circumstances under which the statement[s] [were] made and to accurately describe those circumstances to the magistrate so as to increase the reliability of the underlying evidence." (54 Cal.3d at p. 1074.)

■ Although *Whitman* stops just short of flatly prohibiting section 872, subdivision (b) double hearsay, we believe such prohibition is unavoidable.

Double hearsay, like "reader" testimony, has *"inherent"* uncertainties. (54 Cal.3d at pp. 1074-1075.) The testifying officer, who has *not* interviewed the declarant, will inevitably be "unable to answer potentially significant questions regarding the . . . circumstances" (*id.* at p. 1074) under which the statement was made. For example, Detective Osman would have been unable to answer questions concerning Mr. Schiro's demeanor, certainty, apparent intelligence, possible bias, suggestibility, etc. Yet these "potentially significant" matters are the very ones which require the special witness qualifications specified in section 872, subdivision (b) and elaborated by *Whitman.*

Moreover, a rule which would *prohibit* an officer who heard statements from testifying to them, such as one-year Officer Yahn, but *permit* an officer who did not hear them, to testify to them, such as Detective Osman, is, at best, constitutionally suspect.

As *Whitman* observed:

"Moreover, to allow testimony by noninvestigating officers or readers would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115. (See Evid. Code, § 1201 [multiple hearsay admissible only if each hearsay statement admissible under hearsay rule exception].) Although such multiple hearsay was not present in this case, we doubt that Proposition 115 was intended to sanction a procedure whereby a noninvestigating officer, lacking any personal knowledge of the matter, nonetheless would be permitted to relate not only what the investigating officer told him, but also what the other witnesses told the investigating officer. It is noteworthy that although Proposition 115 created an exception to the basic hearsay rule contained in Evidence Code section 1200 (see new Pen. Code, § 872, subd. (b)), the measure did not purport to create a similar exception for the multiple hearsay rule of Evidence Code section 1201.

■ "In addition, an interpretation of Proposition 115 that would allow 'reader' or multiple hearsay testimony would raise constitutional questions that we can and should avoid by limiting admissible hearsay testimony to testimony by qualified investigative officers. (See, e.g., *People* v. *Smith* (1983) 34 Cal.3d 251, 259 [193 Cal.Rptr. 692, 667 P.2d 149] [construing Prop. 8, 'The Victims' Bill of Rights' initiative measure, to avoid constitutional doubts].) As discussed below, we believe that the latter, more limited, form of hearsay evidence satisfies federal requirements of *reliability* (see *Ohio* v. *Roberts* (1980) 448 U.S. 56, 63-65 [65 L.Ed.2d 597, 605-607, 100 S.Ct. 2531], and thus properly may be admitted at preliminary hearings despite the defendant's inability to confront and cross-examine the declarant

witness or victim. But substantial additional objections to the reliability of the evidence might arise if multiple hearsay were involved, and the defendant were also deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the circumstances under which the out-of-court statement was made." (54 Cal.3d at p. 1074. Original italics.)

■ We hold that because Detective Osman's testimony relating Mr. Schiro's statements was double hearsay, it was inadmissible.[6] Since it was only that testimony which linked the defendant to the crimes, the error was prejudicial.

## Disposition

The order setting aside the information is affirmed.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied April 24, 1992, and appellant's petition for review by the Supreme Court was denied June 17, 1992.

---

[6]Cf. *Whitman* v. *Superior Court, supra,* 54 Cal.3d 1063, 1085, footnote 2 (conc. opn. of Mosk, J.). See *Montez* v. *Superior Court* (1992) 4 Cal.App.4th 577 [5 Cal.Rptr.2d 723]; but see *People* v. *Retamoza* (1992) 3 Cal.App.4th 1304 [5 Cal.Rptr.2d 137].