[No. B062849. Second Dist., Div. Seven. Apr. 15, 1992.]

JACOB E. SHANNON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

678

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, John Ponist and Elizabeth Warner-Sterkenburg, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**LILLIE, P. J.**—Jacob E. Shannon petitions this court for a writ of prohibition directing respondent court to set aside its order of October 30, 1991,

denying his motion to set aside information pursuant to Penal Code section 995, and to grant the motion. The principal issue is whether the multiple hearsay evidence introduced by the People's sole witness (Officer Vargas) at the preliminary hearing was admissible under Proposition 115. Real party in interest concedes that if the multiple hearsay evidence is inadmissible, there is insufficient evidence to hold petitioner to answer and the information should be set aside.

### Procedural Background

After a preliminary hearing on August 28, 1991, petitioner was held to answer to one count of grand theft from the person; an information was filed alleging that on or about July 28, 1991, Shannon committed the crime of "Grand Theft Person" (Pen. Code, § 487, subd. 2) in that he took property from the person of Mia Thomas.

Shannon thereafter filed motion to set aside information under Penal Code section 995 on the ground there was insufficient evidence at the preliminary hearing to hold him to answer in that the multiple level hearsay testimony of Officer Vargas was inadmissible under Proposition 115.

In denying the Penal Code section 995 motion, respondent court stated, "If Evidence Code section 1200 et sequitur has been abolished [by Proposition 115], so has section 1201. Multiple hearsay is appropriate at the preliminary hearing level. The 995 motion is denied." On November 14, 1991, Shannon filed petition for writ of prohibition challenging the denial of his Penal Code section 995 motion. On December 9, 1991, our Supreme Court filed its opinion in *Whitman v. Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262] (*Whitman*), which addressed some issues under the hearsay provisions of Proposition 115. On January 22, 1992, we issued order to show cause on which oral argument has been had. The issues before us are (1) whether Officer Vargas qualified as an investigating officer under the test set out in *Whitman* and, if so, (2) whether the double level hearsay statements he offered at the preliminary hearing were properly admissible under Proposition 115.

### Preliminary Hearing Testimony

At the preliminary hearing, Officer Vargas was the sole witness. He testified that he had been a police officer for nine years and, along with a Detective Gerardi, was one of the investigating officers in Shannon's case; he had spoken to Officer Grugall about the case; Officer Grugall had spoken to the victim, Mia Thomas. At that point, Shannon objected that what Vargas

would testify Thomas told Grugall was "hearsay, and it is not covered by [Proposition] 115." After the objection was overruled, Officer Vargas testified that Officer Grugall told him the following: Grugall had spoken with Mia Thomas at 2 a.m. on July 28, 1991, at her apartment in Van Nuys; Thomas told Grugall that at 11 p.m. on July 27 she was going to visit her mother at her apartment building at 7541 Laurel Canyon Boulevard when she was approached by a person she knew as Jake Shannon; Thomas had met Shannon at her mother's apartment building on prior occasions; Jake Shannon asked her, "How much money you got on you?" and grabbed at her purse; Thomas struggled with Shannon, who pulled the purse away from Thomas and entered the apartment building.

Thomas also described Jake Shannon to Grugall as a Black male about 46 years old, 6 feet, 4 inches tall, weighing about 185 pounds, and walking with a limp. After speaking with Thomas, Officer Grugall went to 7541 Laurel Canyon Boulevard and spoke with a Samuel Davis, a security guard at the front door; Grugall asked Davis if he knew a person by the name of Jake Shannon and gave Davis the physical description given to him by Thomas; Davis told Grugall that he knew Jake Shannon, who lived in the far corner, room 20; Grugall and Davis went to room 20; the door was open and Davis said, "That is Jake Shannon." Grugall arrested Jake Shannon about 2:50 a.m. on July 28.

Officer Vargas further testified that earlier on the day of the preliminary hearing, Officer Grugall had been in court with Vargas and had pointed out the defendant as the person Grugall had arrested. The police report, written by an Officer Thrall, listed the value of the items taken from Thomas at $1,758.

On cross-examination, Officer Vargas admitted his knowledge was gained only "from statements that were given to me." Officer Vargas did not know if Thomas ever saw the person that Officer Grugall had arrested; Vargas admitted that the defendant did not look 46 years old; the police report listed the defendant's age as 58 years. Officer Vargas testified that Officer Grugall told him that he (Grugall) believed the three-hour delay from the time of the incident to the time Thomas reported it to police was because Thomas had to take the bus home from her mother's apartment; however, Vargas admitted that Officer Grugall did not know the reason for the delay, Grugall was guessing. Officer Vargas further testified that when Officer Grugall originally talked to Thomas, she told Grugall that one gold necklace was taken; the police report lists the property taken from Thomas to include three chains and three rings. Vargas admitted he did not know whether the property taken from Shannon at the time of his arrest was the same property Thomas

claimed was taken from her. Thomas said the purse taken from her was brown leather; police recovered in Shannon's room a brown cloth purse with brown leather straps. Officer Vargas also admitted that Officer Grugall had been a police officer for about two years and had not completed the course required to testify at preliminary hearings, and that was one of the reasons why he (Vargas) was testifying.

## I

### THE WHITMAN TEST OF A PROPERLY QUALIFIED INVESTIGATING OFFICER

In *Whitman, supra,* 54 Cal.3d 1063, the Supreme Court noted that Proposition 115 amended Penal Code section 872, subdivision (b), "to provide that a probable cause determination at a preliminary hearing may be based on hearsay statements related by a police officer with certain qualifications and experience. ('Notwithstanding Section 1200 of the Evidence Code [(the hearsay rule)], the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings.')" (54 Cal.3d at p. 1070.)

"Properly construed, Proposition 115 does not authorize a finding of probable cause based on the testimony of a noninvestigating officer or 'reader' merely reciting the police report of an investigating officer. We believe the probable intent of the framers of the measure was to allow a properly qualified investigating officer to relate out-of-court statements by crime victims or witnesses, including other law enforcement personnel, without requiring the victims' or witnesses' presence in court. The testifying officer, however, must not be a mere reader but must have sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (54 Cal.3d at pp. 1072-1073.) "Additionally, the experience and training requirements of the section help assure that the hearsay testimony of the investigating officer will indeed be as reliable as appropriate in light of the limited purpose of the preliminary hearing . . . ." (*Id.,* at p. 1078.)

The court in *Whitman* noted that Proposition 115 considerably narrowed the purpose of the preliminary hearing: " 'It is the purpose of a preliminary

hearing to establish whether there exists probable cause to believe that the defendant has committed a felony. *The examination shall not be used for purposes of discovery.*' (Pen. Code, § 866, subd. (b), italics added.)" (54 Cal.3d at pp. 1080-1081.)

The court in *Whitman* acknowledged that "Although the underlying reliability of the victim or witness may remain untested until trial, we think the evaluation and cross-examination of the testimony of the qualified investigating officer provides sufficient basis for a pretrial probable cause determination." (54 Cal.3d at p. 1078.)

■ It is clear from *Whitman*, then, that in addition to the experience or training requirements expressly set out in Penal Code section 872, subdivision (b), the testifying officer must also have "sufficient knowledge of the crime *or* the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (54 Cal.3d at pp. 1072-1073, italics added.) The court restates its conclusion "that Proposition 115's hearsay provisions were intended to foreclose the testimony of a noninvestigating officer lacking *personal* knowledge of either the crime or the circumstances under which the out-of-court statements were made." (*Id.*, at p. 1073, italics added.)

As we interpret the two-prong test set out in *Whitman*, the testifying officer, in addition to an experience or training requirement, also must have *personal* knowledge of the crime *or personal* knowledge of the circumstances under which the out-of-court statements were made. By requiring the testifying officer to have *personal* knowledge of either of the above two factors, the test appears to foreclose multiple hearsay testimony by its very terms. Before addressing the issue of multiple hearsay in more depth, we first address the issue of whether, and to what extent, Officer Vargas was qualified to present hearsay testimony under Proposition 115.

■ Although the magistrate and the trial court did not have the benefit of *Whitman* at the time the various rulings were made, and the defendant below did not specifically challenge Officer Vargas's qualifications under Penal Code section 872, subdivision (b), the issue is one of law which we can resolve on the record of the preliminary hearing. ■ On review by appeal or writ from a section 995 motion, "the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer." (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr.2d 503, 669 P.2d 1278].)

## II

### OFFICER VARGAS WAS QUALIFIED TO TESTIFY TO DECLARANT GRUGALL'S OUT-OF-COURT STATEMENTS

■ Real party argues that Officer Vargas was indeed a qualified investigating officer because he had spoken to Officer Grugall "who had initially contacted the victim and who had arrested the defendant, and his testimony was specifically predicated thereon." Real party also points out that petitioner's counsel had an opportunity to explore the basis of Officer Vargas's testimony that he was an investigating officer, but did not do so. Real party concludes that "the fact [that Officer Vargas was an investigating officer] remains unchallenged."

On the other hand, petitioner argues that "The People are defining the term investigating officer in a way perhaps unique to Los Angeles County. In Los Angeles County, the 'investigating officer' has no personal knowledge of the witnesses' statements at all. Rather, the investigating officer is one who gathers the reports of various percipient officers and then assists the prosecutor in presenting the case at trial or preliminary hearing. However, this definition is contrary to the definition adopted by California Supreme Court. . . . In defining the term 'investigating officer,' it is clear that the Court [in *Whitman*] was referring to an officer who had personal knowledge of the witnesses' statements, not an officer with no such personal knowledge."

The parties fail to distinguish between the issue of Officer Vargas's qualifications to testify to declarant Grugall's out-of-court statements concerning what Grugall saw and did, excluding any statements made by Thomas to Grugall, and the issue of Vargas's qualifications to testify to what Grugall told him that Thomas had said. The latter issue involves double hearsay, while the former issue does not.

As to the former issue, involving only a single level of hearsay testimony of Officer Grugall, it is clear that Officer Vargas is not the mere "reader" disapproved in *Whitman*. In *Whitman*, an Officer Navin stopped the defendant for driving under the influence of alcohol and/or drugs and prepared a written report on the incident; the only witness to testify at the preliminary hearing was Officer Alexander, who simply related the contents of Officer Navin's investigative report, but "was not involved in the investigation of the case and had no personal knowledge of the circumstances under which Navin's report was prepared." (54 Cal.3d at p. 1072.)

Officer Vargas, however, had personal knowledge of the circumstances of Officer Grugall's out-of-court statements. Thus, Officer Vargas was qualified

to testify as to Officer Grugall's statements which do not include any of Thomas's statements to Grugall. (See *Whitman, supra,* 54 Cal.3d at p. 1073.) However, this conclusion—that Officer Vargas was qualified to present declarant Grugall's out-of-court statements—does not resolve the issue of whether Vargas was qualified to testify to declarant *Thomas's* out-of-court statements to Officer Grugall. Real party implicitly concedes that the out-of-court statements of other declarants, including the victim Thomas, are necessary to support a finding of probable cause. We thus must address the issue of the propriety of multiple hearsay under Proposition 115.

## III

### Multiple Hearsay Under Proposition 115

■ The court in *Whitman,* while acknowledging that multiple hearsay was not present in that case, (54 Cal.3d at p. 1074), did speak to the issue: "Moreover, to allow testimony by noninvestigating officers or readers would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115. (See Evid. Code, § 1201 [multiple hearsay admissible only if each hearsay statement admissible under hearsay rule exception].) Although such multiple hearsay was not present in this case, we doubt that Proposition 115 was intended to sanction a procedure whereby a noninvestigating officer, lacking any personal knowledge of the matter, nonetheless would be permitted to relate not only what the investigating officer told him, but also what the other witnesses told the investigating officer. It is noteworthy that although Proposition 115 created an exception to the basic hearsay rule contained in Evidence Code section 1200 (see new Pen. Code, § 872, subd. (b)), the measure did not purport to create a similar exception for the multiple hearsay rule of Evidence Code section 1201. [¶] In addition, an interpretation of Proposition 115 that would allow 'reader' or multiple hearsay testimony would raise constitutional questions that we can and should avoid by limiting admissible hearsay testimony to testimony by. qualified investigative officers. [Citation.] As discussed below, we believe that the latter, more limited, form of hearsay evidence satisfies federal requirements of reliability [citation], and thus properly may be admitted at preliminary hearings despite the defendant's inability to confront and cross-examine the declarant witness or victim. But substantial additional objections to the reliability of the evidence might arise if multiple hearsay were involved, and the defendant were also deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the circumstances under which the out-of-court statement was made." (54 Cal.3d at p. 1074.)

In the instant case, it is clear that Officer Grugall did not meet the Proposition 115 requirements so as to permit him to testify to Thomas's out-of-court statements.[1] We believe that neither Proposition 115 nor *Whitman* can be read to sanction a procedure whereby a nonqualifying officer, who would not be permitted to testify to hearsay at the preliminary hearing, can simply talk to an officer, in this case, Officer Vargas, who may be so qualified, as to enable the latter to testify to double level hearsay. We do not believe that such a procedure is permitted by Proposition 115 as interpreted by *Whitman*. Further, whether Officer Grugall was qualified or not, Officer Vargas did not meet the *Whitman* test in that at the time he testified he had no *personal* knowledge of the crime or the circumstances under which Thomas's statements were made to Grugall.

Under the circumstances of this case, our conclusion that Officer Vargas was not qualified to testify to Thomas's out-of-court statements to Grugall is consistent with the express purpose of Proposition 115 and does not place an inordinate burden on the police. In preparation for the preliminary hearing, Officer Vargas himself could have contacted victim Thomas and obtained her statements, thus avoiding the double hearsay problem.

In light of the foregoing, we conclude that the magistrate erred in basing his probable cause finding on Officer Vargas's testimony of the out-of-court statements of Thomas and Davis to Officer Grugall. When such statements are properly excluded under Proposition 115, there is insufficient evidence to constitute probable cause to hold Shannon to answer. Accordingly, the motion to set aside the information should have been granted.

Because it appears that the People will be entitled to recharge petitioner, we address petitioner's constitutional challenges to Proposition 115. Although petitioner acknowledges that *Whitman* addressed the federal issues regarding due process, confrontation and reciprocity, petitioner argues that the California Supreme Court has wrongly decided those issues. As we are bound by *Whitman*, we find petitioner's constitutional challenges to Proposition 115 to be without merit.

## DISPOSITION

The petition for writ of prohibition is granted; let a writ of prohibition issue commanding respondent court to set aside its order denying

---

[1]Accordingly, we need not address the interesting issue of whether Proposition 115 permits multiple hearsay in a situation in which all police officer declarants as well as the testifying officer constitute qualified investigating officers within the meaning of *Whitman*.

petitioner's motion to set aside the information under Penal Code section 995 and to enter a new order granting petitioner's motion to set aside the information.

Johnson, J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied May 5, 1992, and the petition of real party in interest for review by the Supreme Court was denied June 24, 1992.