101 Cal.Rptr.2d 242 (2000)
84 Cal.App.4th 631
Azucena CORREA, Petitioner,
v.
The SUPERIOR COURT of Orange County, Respondent;
The People, Real Party in Interest.
No. G027265.
Court of Appeal, Fourth District, Division Three.
October 30, 2000.
Review Granted January 24, 2001.
Carl C. Holmes, Public Defender, Deborah A. Kwast, Chief Deputy Public Defender, Kevin Phillips, Assistant Public Defender, and Donald E. Landis, Jr., Deputy Public Defender for Petitioner.
Tony Rackauckas, District Attorney, Stephan Sauer and Brian F. Fitzpatrick, Deputy District Attorneys for Real Party in Interest.

OPINION
O'LEARY, J.
Azucena Correa's writ petition addresses the admissibility of a police officer's testimony at a preliminary hearing with respect to statements made by the victim and witnesses in the field through an interpreter. We conclude the interpreter adds a layer of hearsay for which there is no legal exception. Accordingly, we hold the testimony was inadmissible, there was insufficient evidence to hold petitioner to answer, and thus her Penal Code section 995 motion should have been granted.[1]

FACTS
In this case two English-only-speaking police officers responded to a domestic violence call and were confronted with a Spanish-only-speaking victim, Miguel Gil, and Spanish-only-speaking witnesses, Patricia Gil and petitioner's mother. At the scene, the officers utilized the translation services of two neighbors, Hector Garcia and Higinia Garcia. The record reflects *243 Patricia called the police from the Garcias' residence but does not indicate what language was spoken on the phone. Hector assisted the police as an interpreter in their discussions with petitioner's mother and the victim. Higinia served as an interpreter in the discussions with petitioner's mother and Patricia.
At the preliminary hearing, both Hector and Higinia testified they served as interpreters at the scene. Neither used an interpreter while testifying. As to his qualifications as an interpreter, Hector testified he is United States born, learned the Spanish language at home from his mother, speaks Spanish on a daily basis with his mother and believes he is fluent in the Spanish language. The record is silent as to Hector's age and education. Higinia testified she is Mexican born, came to live in the United States at age 10, and attended elementary school in the United States. She did not specify which grades she completed. Higinia stated she is currently employed by a school district and is required to speak English on the job, but does not consider herself fluent in English as she knows "just enough to communicate."
Hector further testified he attempted to translate the officer's questions and the witnesses' answers as accurately as possible. However, he admitted he only related in English to the officers the "general gist" of what was being said in Spanish. He indicated he did not provide an exact word-for-word translation but did not add or leave out anything "of substance." He could not remember the specifics of any of the questions or answers given.
Hector acknowledged he had difficulty understanding petitioner's Spanish-speaking mother because "she had a really low voice and she wasn't ... listening to the officer or [him]." He questioned whether she could understand his translation and consequently whether her responses were accurate.
Higinia testified she remembered conversing with petitioner's mother and Patricia. She recalled the mother spoke very slowly, and Patricia spoke "very, very fast." She testified she had no trouble understanding what the women said. Like Hector, she had no recollection of the specific questions asked or the answers given. Although she also did not use an interpreter at the hearing, the record indicates she had some trouble understanding a few of the prosecutor's questions.
Finally, the two officers, Michelle Bland and Michael Ogawa, testified.[2] Bland relayed Patricia's statements as reported to her by Higinia. Ogawa testified as to the statements of the victim and petitioner's mother as reported to him by Hector. The officers' testimony in summary is as follows: Petitioner and her boyfriend, Miguel, argued outside her mother's house. During the dispute, petitioner scratched Miguel's face and hit his mouth with a ratchet wench. She then retrieved a small kitchen knife from the house and told Miguel, "You won't dare hit me." Despite Patricia's efforts to keep petitioner away from Miguel, who was holding Patricia's child, petitioner stabbed Miguel with the knife. Patricia went to a neighbor's house where she met Higinia and Hector Garcia and called the police.
Officer Ogawa further testified he later spoke to petitioner, who admitted Miguel was her boyfriend and that she was present at the scene when he was stabbed. The court denied the defense's request to inquire of the officer as to the use of an interpreter and the language in which the conversation was conducted.
Finally, the parties stipulated, based on a blood test taken at a hospital soon after *244 the incident, that Miguel was highly intoxicated, with a blood alcohol level of 0.24.
The magistrate held petitioner to answer on the following charges: assault with a knife (§ 245, subd. (a)(1)), battery against a cohabitant (§ 243, subd. (e)(1)), and child endangerment causing great bodily injury (§ 273a, subd. (a)). Thereafter, in superior court, petitioner moved to dismiss the information (§ 995) on the ground that incompetent evidence was introduced at the preliminary hearing. The trial court denied the motion and petitioner filed the underlying writ petition challenging this ruling. We issued an order to show cause and set the matter for hearing.

DISCUSSION
Petitioner maintains the trial court should have granted her section 995 motion because the magistrate erred in admitting the officers' multiple hearsay testimony regarding what the Spanish-speaking witnesses said through the Spanish/English-speaking lay interpreters. To evaluate this claim, we first turn to Evidence Code section 1200, subdivision (a), which sets forth the hearsay rule. It provides, "`Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." The reasons for excluding hearsay evidence are that the statements are not made under oath, the defendant has no opportunity to cross-examine the person who made them, and a trier of fact cannot observe the demeanor of the person making them. (See 1 Witkin, Cal. Evidence (3d ed. 1986) The Hearsay Rule, § 558, p. 533.)
Of course, there are exceptions to this rule. (See 1 Witkin, supra, § 558, p. 533.) Such an exception was created in 1990 when the voters adopted Proposition 115, an initiative measure entitled, "The Crime Victims Justice Reform Act." Among many other things, Proposition 115 added section 30, subdivision (b) to article 1 of the California Constitution, declaring hearsay evidence is admissible at preliminary hearings in criminal cases "[i]n order to protect victims and witnesses...." The measure also amended "section 872, subdivision (b), of the Penal Code to provide that a probable cause determination at a preliminary hearing may be based on hearsay statements related by a police officer with certain qualifications and experience." (Whitman v. Superior Court (1991) 54 Cal.3d 1063, 1070, 2 Cal.Rptr.2d 160, 820 P.2d 262.)
As explained by the Supreme Court in Whitman, Proposition 115 allows "an investigating officer to relate at the preliminary hearing any relevant statements of victims or witnesses, if the testifying officer has sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to meaningfully assist the magistrate in assessing the reliability of the statement." (Whitman v. Superior Court, supra, 54 Cal.3d at p. 1075, 2 Cal.Rptr.2d 160, 820 P.2d 262.) Thus, Proposition 115 contemplates the officer will rely upon his or her experience and expertise to assess that which he or she hears and sees, draw appropriate inferences and accurately transmit the information to the magistrate in court where the information contained in his or her testimony can be evaluated.
For this reason, the Whitman court determined "the testimony of a noninvestigating officer or `reader' merely reciting the police report of an investigating officer" cannot be the basis of a finding of probable cause at the preliminary hearing. (Whitman v. Superior Court, supra, 54 Cal.3d at p. 1072, 2 Cal.Rptr.2d 160, 820 P.2d 262.) The court determined that to allow testimony of a "reader" who lacks sufficient knowledge of the crime or the circumstances under which the out-of-court statements were made "would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115." (Id. at p. 1074, 2 Cal.Rptr.2d 160, 820 P.2d 262.) It concluded, "[Substantial *245 additional objections to the reliability of the evidence might arise if multiple hearsay were involved, and the defendant were also deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the circumstances under which the out-of-court statement was made." (Ibid.)
Following the Whitman court's lead, several appellate courts have interpreted Proposition 115 as precluding the use of multiple hearsay at preliminary hearings even when offered by an otherwise qualified investigating officer. "Proposition 115 does not authorize the use of double or multiple hearsay statements and such testimony is admissible only if it qualifies under some other exception to the hearsay rule." (Tu v. Superior Court (1992) 5 Cal.App.4th 1617, 1622, 7 Cal. Rptr.2d 758, original italics.) For example, in People v. Wimberly (1992) 5 Cal. App.4th 439, 445, 6 Cal.Rptr.2d 800, a police officer testified at the preliminary hearing about statements made personally to him by the victim and statements made to another officer by the victim's apartment manager. The court determined the testimony relating to the manager's statements was inadmissible double hearsay. It reasoned the officer "was not `capable of using his ... experience and expertise to assess the circumstances under which the statements] [were] made and to accurately describe those circumstances to the magistrate so as to increase the reliability of the underlying evidence.' [Citation] [f] ... Double hearsay, like `reader' testimony, has 'inherent' uncertainties. [Citation.] The testifying officer, who has not interviewed the declarant will inevitably be 'unable to answer potentially significant questions regarding the ... circumstances' [citation] under which the statement was made. For example, [the officer] would have been unable to answer questions concerning [the manager's] demeanor, certainty, apparent intelligence, possible bias, suggestibility, etc. Yet these `potentially significant' matters are the very ones which require the special witness qualifications specified in section 872, subdivision (b) and elaborated by Whitman." (Id. at pp. 445-446, 6 Cal.Rptr.2d 800, original italics; see also Montez v. Superior Court (1992) 4 Cal.App.4th 577, 586, 5 Cal. Rptr.2d 723 [an officer's preliminary hearing testimony as to what an eyewitness/victim told the investigating officer is inadmissible double hearsay]; People v. Sally (1993) 12 Cal.App.4th 1621, 16 Cal.Rptr.2d 161 [same]; Tu v. Superior Court, supra, 5 Cal.App.4th at p. 1622, 7 Cal.Rptr.2d 758 [same]; Shannon v. Superior Court (1992) 5 Cal.App.4th 676, 684-685, 7 Cal.Rptr.2d 47 [same].)
We also note the Supreme Court, in its most recent opinion discussing Proposition 115, repeatedly stated the exception applies only to "single-level hearsay." (People v. Miranda (2000) 23 Cal.4th 340, 96 Cal.Rptr.2d 758, 1 P.3d 73.) The court reiterated the theory that unreliable hearsay testimony is permitted at preliminary hearings because the officer relaying the statements is presumably specially trained in evaluating its reliability and is available for cross-examination on any assessments made. (Id at pp. 349, 354, 96 Cal.Rptr.2d 758, 1 P.3d 73.)
What no court has yet addressed is whether an officer should be permitted at a preliminary hearing to relay the translated hearsay statements of a foreign-speaking declarant. In such cases the officer is not conveying a third party's information from a report but repeating information from third parties as orally reported to them. Utilizing his or her experience and expertise, the officer can assess and accurately describe the general circumstances surrounding the crime based on personal observations but is unable to personally assess or accurately describe the spoken word due to the language barrier. The officer's testimony is a classic example of double hearsay.[3] And, as a result, the *246 defendant is deprived of the opportunity to meaningfully cross-examine the individuals who heard the statements of the witnesses firsthand at the scene.
Relying on one federal and two sister state appellate opinions, the People contend interpreters translating statements of nonparties (witnesses and victims) should be viewed as "language conduits" who do not create an additional layer of hearsay. (United States v. Koskerides (2nd Cir. 1989) 877 F.2d 1129, 1135; People v. Gutierrez (Colo.App.1995) 916 P.2d 598; State v. Patino (1993) 177 Wis.2d 348, 502 N.W.2d 601.) In making this argument, the People acknowledge there exists a more established contrary rule in the federal courts. Indeed, most of the federal circuit courts view the issue of the admissibility of a party's translated statements as an agency question: Those courts evaluate the accuracy and reliability of the translation and determine "on a case-by-case basis whether the translated statements fairly should be considered the statements of the speaker." (United States v. Nazemian (9th Cir.1991) 948 F.2d 522, 527; see also United States v. Martinez-Gaytan (5th Cir.2000) 213 F.3d 890; United States v. Cordero (5th Cir.1994) 18 F.3d 1248, 1252; United States v. Lopez (2d Cir.1991) 937 F.2d 716, 724; United States v. Beltran (1st Cir.1985) 761 F.2d 1, 9; United States v. Alvarez (11th Cir.1985) 755 F.2d 830, 859-860.)[4] The People fail to offer any logical or legal explanation as to why different standards should be applied for translated statements of parties and nonparties.
Thankfully, we need not debate the application of the "language conduit" versus "agency" theory. The federal and sister state court opinions discussing those theories addressed a question distinctly different from the one before us. They were confronted only with the issue of whether a trial court should admit translated extra-judicial statements which fall under a recognized hearsay exception, i.e., the interpreted statements qualified as declarations against interest (Evid.Code, § 1230) or admissions (Evid.Code, § 1220), creating a circumstantial guarantee of trustworthiness. (See also Fed. Rules Evid., rules 804(b)(3) and 801(d)(2), 28 U.S.C.) We must grapple with Proposition 115, which unlike any other recognized hearsay exception, "imposes no requirement that the underlying hearsay evidence itself be reliable or trustworthy." (People v. Miranda, *247 supra, 23 Cal.4th at p. 354, 96 Cal.Rptr.2d 758, 1 P.3d 73.) This is a distinction that makes a difference.
Basic concepts of due process require the courts to make decisions based on credible evidence. It is one thing to say the translation of an inherently reliable statement may be admissible under certain circumstances. We are not willing to extend that theory to translated unreliable statements under the auspices of Proposition 115.
The framers of, and the voters for, Proposition 115 sanctioned only the admission of single-level hearsay from a properly trained investigating officer. Because of its limitations, the measure satisfies federal requirements of reliability. (Whitman v. Superior Court, supra, 54 Cal.3d at p. 1074, 2 Cal.Rptr.2d 160, 820 P.2d 262.) However, it would not pass constitutional muster if expanded to include multiple hearsay where the defendant is deprived of the opportunity to meaningfully cross-examine the testifying officer regarding the accuracy of the translated out-of-court statements.
We are not unsympathetic to the inconvenience and burden our ruling may cause non English-speaking witnesses and victims who will have to personally appear at preliminary hearings to testify. However, we find it is a necessary and not uncommon cost of due process. We note the Supreme Court recently dealt with a similar type of cost analysis in Alvarado v. Superior Court (2000) 23 Cal.4th 1121, 99 Cal.Rptr.2d 149, 5 P.3d 203. There, the court weighed a defendant's rights to a fair trial and to confront witnesses against the need to protect a witness's identity. The court concluded, "[T]he state's legitimate interest in protecting individuals who, by chance or otherwise, happen to become witnesses to a criminal offense cannot justify depriving the defendant of a fair trial.... As this court observed more than 40 years ago, `However praiseworthy was the prosecution's motive in protecting the [witness] from the threat of reprisal[,][s]uch motives and purposes cannot prevail when, as here, they inevitably result, intentionally or unintentionally, in depriving the defendant of a fair trial.' [Citation.]" (Ibid.)

CONCLUSION
After an application of relevant law to the facts of this case, we are compelled to conclude the translations added a layer of hearsay, and multiple hearsay is not permitted under Proposition 115. The court erroneously overruled petitioner's hearsay objections. Because the magistrate's finding of probable cause in this case was based entirely on the improper use of multiple hearsay, we conclude the trial judge erred in denying petitioner's motion to set aside the information under section 995.

DISPOSITION
Let a writ of mandate issue directing the superior court to vacate its prior order and enter a new and different order granting petitioner's motion to set aside the information.
CROSBY, Acting P.J., and BEDSWORTH, J., concur.
NOTES
[1] All further statutory references are to the Penal Code, unless otherwise indicated.
[2] By the time of the preliminary hearing, Michelle Bland had been a peace officer for eight months but had the requisite training and certification to provide hearsay testimony in a preliminary hearing. Michael Ogawa had over 10 years of experience and therefore qualified to give such testimony. (See § 872, subd. (b).)
[3] As petitioner points out, over 100 years ago the Supreme Court wrote several opinions holding an interpreter's translation constitutes a layer of hearsay. (People v. Luis (1910) 158 Cal. 185, 110 P. 580; People v. John (1902) 137 Cal. 220, 69 P. 1063; People v. Ah Yute (1880) 56 Cal. 119; People v. Lee Fat (1880) 54 Cal. 527.) Digging in the dusty books the parties also brought to our attention People v. Jailles (1905) 146 Cal. 301, 79 P. 965, overruled on other grounds in People v. Collins (1960) 54 Cal.2d 57, 59-60, 4 Cal. Rptr. 158, 351 P.2d 326, in which our Supreme Court stated a witness could be called in rebuttal to testify to translated prior inconsistent statements made by a defense witness. The court reasoned, "Taking into consideration all of the evidence of the witness upon this subject, we cannot say the court erred in" ruling the hearsay objection "went simply to the weight of the evidence before the jury." (People v. Jailles, supra, 146 Cal. at p. 306, 79 P. 965.) The court further explained, "It may be added that ... the interpreter] was subsequently sworn as a witness, and testified to the making of the statement by [the defense witness]." (Ibid.) The court failed to cite any authority or legal rational for this holding, and five years later decided that translated extrajudicial statements constitute a layer of hearsay after all. (People v. Luis, supra, 158 Cal. at p. 192, 110 P. 580.)
[4] We note one Court of Appeal panel also adopted the federal "agency theory" analysis. In People v. Torres (1989) 213 Cal.App.3d 1248, 262 Cal.Rptr. 323, a police officer interviewed a foreign-speaking defendant with the help of another police officer who acted as an interpreter. The court reasoned, "When two persons speaking different languages select an interpreter as a medium of their communication, the interpreter is regarded as their joint agent for that purpose. Therefore the statements of the interpreter `are regarded as the statements of the persons themselves; and like any other admission may be shown by the testimony of the person who heard them without calling the interpreter as a witness.'" (Id. at p. 1258, 262 Cal.Rptr. 323, italics added.)