[No. S078243. June 15, 2000.]

THE PEOPLE, Plaintiff and Appellant, v.
LUIS MIRANDA, Defendant and Respondent.

## COUNSEL

Gil Garcetti, District Attorney, Diana L. Summerhayes, Patrick D. Moran and Shirley S. N. Sun, Deputy District Attorneys, for Plaintiff and Appellant.

Victoria H. Stafford, under appointment by the Supreme Court, for Defendant and Respondent.

Barbara B. Fargo, Deputy Public Defender (Santa Clara), for the California Public Defenders Association as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**CHIN, J.**—At the joint preliminary examination of multiple defendants charged with murder and other crimes, the prosecutor sought to admit, as against defendant Luis Miranda and a codefendant, Daniel Morales, the testimony of an investigating officer relating the confession of a nontestifying codefendant, Jose Canela, implicating defendant and Morales in the crimes. Was the officer's testimony, which probably would have been inadmissible at the defendant's *trial* as a violation of the state hearsay rule or state and federal confrontation principles (see *Lilly v. Virginia* (1999) 527 U.S. 116, 132-133 [119 S.Ct. 1887, 1898, 144 L.Ed.2d 117] (*Lilly*); *Bruton v. United States* (1968) 391 U.S. 123, 136 [88 S.Ct. 1620, 1628, 20 L.Ed.2d 476]; *People v. Fletcher* (1996) 13 Cal.4th 451, 460-465 [53 Cal.Rptr.2d 572, 917 P.2d 187]), nonetheless admissible against defendant at his preliminary examination? We conclude that the testimony was admissible for the limited purpose of establishing probable cause to hold defendant for trial.

In this case, the People appealed from an order denying a motion to reinstate a felony complaint against defendant Miranda charging him with two counts of murder with special circumstances and other crimes. The

Court of Appeal reversed the order. We agree and affirm the appellate court's decision. As will appear, neither the state hearsay rule nor applicable federal confrontation or due process principles render inadmissible a qualified law enforcement officer's preliminary examination testimony relating a nontestifying codefendant's extrajudicial confession incriminating the defendant.

FACTUAL SUMMARY

The following undisputed factual statement was taken largely from the Court of Appeal opinion in this case.

1. *The Substantive Offenses.*

On October 9, 1996, Josafat Terraza and Urbano Mendoza were shot and killed in their Maywood apartment. Jose Canela, Daniel Morales, and defendant Luis Miranda were charged with the crimes, and they were codefendants at a joint preliminary examination held on January 9, 1997.

The evidence at this preliminary examination may be summarized as follows: Michael Moreno witnessed events concerning the shooting but was unable to identify anyone as a shooter. Moreno testified that on October 9, about 12:49 a.m., he was in his Maywood apartment and heard a scream and a gunshot coming from apartment No. 18, directly across from his apartment. He looked out his front door and saw two men scuffling in apartment No. 18, where Terraza and Mendoza lived.

One man was standing over, and searching the pockets of, a second man who was on the floor. After the first man stopped searching, he "raised up" some object, and Moreno heard shots. The first man extended his arm at a right angle from his body. Moreno did not observe a gun in the first man's hand, but he heard two additional gunshots.

During the scuffle, Moreno observed a third person, neither Terraza nor Mendoza, running up and down the stairs and in and out of apartment No. 18. After Moreno heard the two additional gunshots, the first man and the third person fled toward the street. Moreno later observed a small truck leave the scene with its tires screeching. (Police officers later took him to the truck, and he identified it.)

After Moreno saw the truck leave, he went to apartment No. 18. Terraza, who had been shot, was on the floor; his face was covered with facial cream. Mendoza also had been shot. Moreno knew that Terraza and Mendoza sold

drugs from their apartment, and he had seen handguns in that apartment on prior occasions. Moreno saw no handguns that night. He identified no one in court.

Los Angeles County Sheriff's Detective Mark Lillienfeld testified that he went to the crime scene and found, in apartment No. 18, two .380-caliber bullets, one 9-millimeter bullet, two .380-caliber casings, one 9-millimeter casing, and another bullet. Lillienfeld also observed a bullet mark on a refrigerator, a bullet hole in a window, and blood. Lillienfeld found narcotics, evidence of narcotics sales, and a wallet that held a California driver's license issued to Luis Miranda. The wallet was on the sidewalk directly outside the bedroom window of apartment No. 18.

Lillienfeld also testified that he had been employed in law enforcement for 16 years; he was currently assigned as a detective in the homicide bureau; and he had been one of the investigating officers in the present case. He testified regarding statements Maywood Police Sergeant Gosnell made to him. According to Lillienfeld, Gosnell told him that while Gosnell was en route to the crime scene, he heard a broadcast of a suspect's description. He subsequently observed a man matching the description running down the street about a block from the crime scene. Gosnell detained him. The suspect had a loaded .380-caliber pistol. Gosnell identified the suspect to Lillienfeld as Jose Canela.

Lillienfeld also testified regarding two statements Canela made to him. After Lillienfeld obtained a waiver of Canela's *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]), Canela gave his first statement, which implicated only himself in the shootings of Terraza and Mendoza. According to Lillienfeld, Canela stated he went alone by bus to apartment No. 18 to buy marijuana. He was carrying his gun for protection. During the narcotics transaction, Terraza became upset, and Canela was afraid Terraza would hurt him. The men struggled for Canela's gun, and Canela shot Terraza, who had white cream on his face. As Canela fled the apartment, he thought Mendoza had a handgun. Canela, fearing he would be shot, fired a shot towards Mendoza.

After interviewing Canela, Lillienfeld interviewed Moreno and learned there were additional suspects. Lillienfeld obtained another waiver of Canela's *Miranda* rights, and Canela gave a second statement. In it, Canela admitted lying to Lillienfeld during the first interview and provided a new version of events. In sum, Canela stated that the three codefendants, Morales, Miranda, and Canela, implemented a plan to rob drug dealers Terraza and Mendoza, and Morales acted as the getaway driver. After Canela and

Miranda went to apartment No. 18 and confronted the victims, Miranda eventually shot or struck Mendoza, and Canela shot Mendoza. Canela subsequently shot Terraza. Canela was later outside apartment No. 18 when he heard a gunshot, ran to help Miranda, and saw him inside, leaning over Terraza and taking his money.

According to Lillienfeld, Canela stated that Miranda first pulled out his Tec-9 machine pistol and demanded money of Terraza and Mendoza. As he did so, the pistol's magazine fell out. After Canela took out his own handgun, he and Mendoza struggled for it. At that time, Miranda shot or struck Mendoza in the head with Miranda's pistol. Canela got control of his weapon with Miranda's help and intentionally shot Mendoza. Canela and Mendoza fell, and Miranda helped Canela get away from Mendoza. After Canela shot Mendoza, and while Miranda was struggling with Terraza and trying to put the magazine back into his pistol, Canela shot Terraza.

After the shootings, Canela ran down the stairs onto the driveway and then back again, trying to persuade Miranda to leave. At one point, Canela heard a gunshot while he was outside apartment No. 18, and he ran back to help Miranda. Miranda was leaning over Terraza's body and picking up money that Terraza had removed from his pocket. At some point, Miranda took Terraza's gun from his hand. Canela convinced Miranda that they should leave, and they did so, but they fled in separate directions. Miranda went toward Morales and the waiting truck. Canela went in the opposite direction, where Gosnell arrested him.

Lillienfeld testified that he took the witness Moreno to the truck, which was registered to Canela's cousin, and that Moreno identified it. Lillienfeld also testified that, according to Canela, the truck was the one used during the crimes. Terraza and Mendoza died of their gunshot wounds.

2. *Defendant's Objections and the Penal Code Section 871.5 Motion.*

At the joint preliminary examination, when the prosecutor first asked Lillienfeld what Canela told him, the following exchange occurred: "[MIRANDA'S DEFENSE COUNSEL]: I'm going to object: hearsay as to my client. Ask that it be limited. [¶] [MORALES'S DEFENSE COUNSEL]: Join. [¶] THE COURT: Very well. The statements will be limited to the declarant only."

The prosecutor protested the ruling, stating she was proffering Canela's statement under the provisions of Proposition 115, and she wanted to use it against Miranda and Morales as well as Canela. The magistrate opined the

prosecutor had an *"Aranda/Bruton* problem" (see *People v. Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]; *Bruton v. United States, supra,* 391 U.S. 123), the prosecutor disagreed, and the magistrate ruled, "I'll take the motion subject to strike, and we'll proceed."

Lillienfeld then testified as to Canela's first statement as outlined above. He also explained that about 12:10 a.m. on October 10, 1996, he conducted his second interview with Canela, who admitted he had lied during the first interview. Canela then affirmed he had not been alone but had been with two other men when the incident occurred.

Counsel representing Miranda and Morales objected "to this statement" as being hearsay as to those codefendants. The magistrate noted the objection but did not then expressly rule on it, indicating some question existed as to whether the *Aranda/Bruton* rule applied, and stating, "I'm taking it subject to a motion to strike." The magistrate directed the prosecutor to proceed. Lillienfeld then testified as to Canela's second statement as outlined above. The prosecution later rested "subject to the motion to strike the testimony," and the preliminary examination was continued to January 10, 1997, to permit the magistrate to research the admissibility issues. Neither Miranda, Morales, nor Canela offered defense evidence.

When the preliminary examination was resumed on January 10, 1997, the prosecutor again urged that Canela's statements were admissible against Miranda and Morales under the provisions of Proposition 115, as construed in *Whitman v. Superior Court* (1991) 54 Cal.3d 1063 [2 Cal.Rptr.2d 160, 820 P.2d 262] (*Whitman*), and that neither the state hearsay rule nor the right to confrontation barred admission of a nontestifying accomplice's out-of-court statements at a preliminary examination.

The magistrate ruled that, "with respect to the statements that are being presented in court, the reason why, to my understanding, that the statement of one defendant cannot be used necessarily against another defendant, unless there is corroboration of the same, is because of the fact that the indicia [of] reliability is not there, and there's also a great issue as to whether or not the defendant making the statement is actually trying to reduce his culpability."

The magistrate continued, "In this case we know that Mr. Canela indicated he was actually the trigger man. He was the shooter. So we know that he is not attempting to reduce his culpability, per se, but there is still an issue of whether or not this rule would allow the use of evidence against one defendant towards the others and whether or not there is a denial—effective cross-examination."

The magistrate then further stated, "I want my rulings to be very, very specific, that way the People can take this on appeal, and hopefully we would have case law which would clear up this issue. [¶] I'm going to hold that the *Aranda/Bruton* rule does apply at the preliminary hearing stage; furthermore, that the statements made by Mr. Canela cannot be used against the defendant, Miranda, and it cannot be used against the defendant, Morales."

The magistrate then concluded, "Having stated that, with respect to the evidence presented and the motions to dismiss by, I would take it, Mr. Canela, that motion will be denied on all counts. As to the defendant, Miranda, and as to Defendant Morales, People, do you wish to be heard? [¶] [THE PROSECUTOR]: In light of the Court's ruling, I'll submit it. There was evidence linking both gentlemen independently to this incident. However, it's certainly not extremely strong, so I'll leave it up to the Court. [¶] THE COURT: Very well. The motion to dismiss by Defendant Miranda and by Defendant Morales are granted."

The prosecution moved in superior court under Penal Code section 871.5 to reinstate the complaint against defendant Miranda, contending the magistrate erred in dismissing the action. (Under subdivision (b) of that section, "The only ground for the motion shall be that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof.") The court denied the motion, and the prosecution appealed. As indicated, the Court of Appeal ruled that neither the state hearsay rule nor applicable federal confrontation or due process principles render inadmissible a qualified law enforcement officer's preliminary examination testimony relating a nontestifying codefendant's extrajudicial confession incriminating the defendant. As will appear, we agree with the Court of Appeal.

## DISCUSSION

### 1.  *Proposition 115 and Whitman.*

Defendant Miranda argues that use of Canela's statement at his preliminary examination to implicate him in the murders violated the state hearsay rule as well as his state and federal due process and confrontation rights. To evaluate these claims, we first turn to the provisions of Proposition 115, as we construed it in *Whitman, supra,* 54 Cal.3d 1063.

Among other things, Proposition 115, enacted in 1990, adopted article I, section 30, subdivision (b) of the California Constitution, declaring hearsay evidence admissible at preliminary examinations in criminal cases, as may

be provided by law. (*Whitman, supra,* 54 Cal.3d at p. 1070.) In addition, the measure amended Penal Code section 872, subdivision (b), to provide that a probable cause determination at a preliminary examination may be based on out-of-court declarants' hearsay statements related by a police officer with certain qualifications and experience. (*Whitman, supra,* 54 Cal.3d at p. 1070.) Additionally, the measure added Evidence Code section 1203.1 to provide a preliminary examination exception to the general requirement that all hearsay declarants be made available for cross-examination. (*Whitman, supra,* 54 Cal.3d at p. 1070.)

Further, the 1990 measure amended Penal Code section 866, subdivision (a), to give magistrates discretion to limit defendants' right to call witnesses on their behalf. (*Whitman, supra,* 54 Cal.3d at pp. 1070-1071.) Finally, the measure added Penal Code section 866, subdivision (b), which explains, "It is the purpose of a preliminary examination to establish whether there exists probable cause to believe that the defendant has committed a felony. The examination shall not be used for purposes of discovery." (See *Whitman, supra,* 54 Cal.3d at p. 1071.)

In *Whitman,* the prosecution had relied on these provisions of Proposition 115 to present, over the defendant's objection, certain hearsay testimony at a preliminary examination. On appeal, we held that testimony by a noninvestigating officer or "reader" who related the contents of a police report prepared by an investigating officer in circumstances unknown to the reader could not provide probable cause to hold a defendant to answer. (*Whitman, supra,* 54 Cal.3d at pp. 1072-1075.) ■ However, we rejected the defendant's various constitutional challenges to Proposition 115 and construed the measure to allow a qualified law enforcement officer to relate single-level hearsay such as is involved in this case, if the officer had sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to provide meaningful assistance to the magistrate in assessing the *reliability* of the statement. We opined that "the latter, more limited, form of hearsay evidence satisfies federal requirements of *reliability* [citation], and thus properly may be admitted at preliminary hearings *despite the defendant's inability to confront and cross-examine the declarant witness* . . . ." (*Whitman, supra,* 54 Cal.3d at p. 1074, second italics added.)

*Whitman* also discussed the impact of the state and federal confrontation clauses on testimony made admissible by Proposition 115. We observed that the measure permitted the admission of hearsay at preliminary examinations and thus amounted to a state constitutional exception to the right to confrontation enunciated in the state Constitution. (*Whitman, supra,* 54 Cal.3d at pp. 1076-1077.)

As for the federal confrontation clause, and the federal case law requiring reliable hearsay testimony, *Whitman* observed that Proposition 115 amply guaranteed reliability because ". . . the experience and training requirements of [Penal Code section 872] help assure that the hearsay testimony of the investigating officer will indeed be as reliable as appropriate in light of the limited purpose of the preliminary hearing . . . . [Citation.] Although the underlying reliability of the . . . witness may remain untested until trial, we think the *evaluation and cross-examination of the testimony of the qualified investigating officer* provides sufficient basis for a pretrial probable cause determination." (*Whitman, supra,* 54 Cal.3d at p. 1078, italics added.)

We also observed in *Whitman* that it was "doubtful that the federal confrontation clause operates to bar hearsay evidence offered *at a preliminary hearing* held to determine whether probable cause exists to hold the defendant for trial." (*Whitman, supra,* 54 Cal.3d at p. 1078.) We noted that the United States Supreme Court had never so held, and we quoted United States Supreme Court authority that " '[t]he right to confrontation is *basically a trial right.*' [Citations]." (*Whitman, supra,* 54 Cal.3d at p. 1079.) *Whitman* also discussed the probable cause hearing required under the Fourth Amendment by *Gerstein v. Pugh* (1975) 420 U.S. 103 [95 S.Ct. 854, 43 L.Ed.2d 54], as a condition of an arrestee's continued detention pending trial. *Whitman* concluded that "the new, limited form of preliminary hearing in this state sufficiently resembles the Fourth Amendment probable cause hearing examined in *Gerstein, . . . to meet federal confrontation clause standards despite reliance on hearsay evidence.*" (*Whitman, supra,* 54 Cal.3d at p. 1082, italics added.)

Finally, *Whitman* rejected the argument that admission of single-level hearsay at the preliminary examination constituted a violation of due process. (See *Whitman, supra,* 54 Cal.3d at p. 1082.) We observed that Proposition 115 provides the defendant with a reasonable opportunity to cross-examine and evaluate the testimony of a qualified law enforcement officer relating single-level hearsay, and to call specified defense witnesses to rebut or qualify that testimony. We concluded these opportunities amply satisfied the demands of due process. (*Whitman, supra,* 54 Cal.3d at p. 1082.)

2. *Hearsay, Confrontation, and Due Process.*

Defendant argues that use of Canela's statement at the joint preliminary examination to implicate defendant in the charged offenses violated the state hearsay rule as well as his state and federal due process and confrontation rights. He asserts that the testimony at issue here is not "ordinary" hearsay such as was involved in *Whitman,* but "presumptive[ly] unreliab[le]"

hearsay because of Canela's status as a confessed accomplice and his probable motivation to implicate defendant and exonerate himself. (See *Lilly, supra,* 527 U.S. at pp. 132-133 [119 S.Ct. at p. 1898]; *Lee v. Illinois* (1986) 476 U.S. 530, 541 [106 S.Ct. 2056, 2062, 90 L.Ed.2d 514]; *Bruton v. United States, supra,* 391 U.S. at p. 136 [88 S.Ct. at p. 1628]; *People v. Guiuan* (1998) 18 Cal.4th 558, 567 [76 Cal.Rptr.2d 239, 957 P.2d 928] [accomplice testimony "subject to distrust"]; *People v. Campa* (1984) 36 Cal.3d 870, 882 [206 Cal.Rptr. 114, 686 P.2d 634] [accomplice statements, being "inherently suspect," cannot support arrest warrant]; Pen. Code, § 1111 [requiring corroboration of accomplice testimony to sustain conviction].) Under *Lilly,* according to defendant, an accomplice's custodial confession is inadmissible *at any phase of a criminal proceeding* for two reasons: The confession is both presumptively untrustworthy, and it falls within no "firmly rooted" hearsay exception. (*Lilly, supra,* 527 U.S. at pp. 132-138 & fn. 5 [119 S. Ct. at pp. 1898-1900].)

*Lilly* and most of the other authorities defendant cites as finding an accomplice's custodial confession unreliable involved the proposed admission of the confession *at trial.* In *Bruton,* for example, the court held that "because of the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining [the defendant's] guilt, admission of [the codefendant's] confession in this joint trial" violated the defendant's federal confrontation right. (*Bruton v. United States, supra,* 391 U.S. at p. 126 [88 S.Ct. at p. 1622]; see also *People v. Aranda, supra,* 63 Cal.2d at pp. 528-531; *People v. McRae* (1947) 31 Cal.2d 184, 186-187 [187 P.2d 741] [uncorroborated accomplice testimony may support probable cause finding at preliminary examination].)

In *McRae,* the court, in an opinion written by then Associate Justice Traynor, ruled that despite the "untrustworthy source" of such testimony, "A committing magistrate may nevertheless believe the testimony of an accomplice and conclude that there is probable cause to believe defendant guilty of a public offense to which he should be held to answer." (*People v. McRae, supra,* 31 Cal.2d at p. 186.) Similar reasoning would permit a magistrate to consider accomplice Canela's statements in this case. We observe that, despite its presumed unreliability, such evidence represents an accusation of criminal conduct made to a law enforcement officer and ordinarily warranting consideration in preliminary proceedings designed to determine whether formal charges should be brought.

As previously noted, *Whitman* observed that under the high court cases, the right to confrontation is " '*basically a trial right.*' " (*Whitman, supra,* 54 Cal.3d at p. 1079, italics added by *Whitman.*) *Whitman* concluded that *at a*

*preliminary examination* conducted under Proposition 115, testimony by a qualified law enforcement officer such as Lillienfeld relating single-level hearsay is, as to the defendant, admissible as against hearsay, confrontation clause, and due process objections. We see no good reason for applying a different rule to a qualified officer's testimony relating out-of-court hearsay statements by nontestifying accomplices, despite defendant's claim of the general unreliability of such statements. Judges and magistrates are presumably well equipped to consider and weigh the possible unreliability of an accomplice's statement in determining whether to hold the defendant for trial.

As we pointed out in an earlier case, "Accomplice testimony is generally suspect because it may have been proffered in the hope of leniency or immunity, and thus greater weight may be accorded such testimony than is warranted. [Citation.] However, when a judge rather than a jury is trier of fact it is not unreasonable to assume he is more critical of accomplice testimony and more likely to accord it appropriate weight." (*In re Mitchell P.* (1978) 22 Cal.3d 946, 951 [151 Cal.Rptr. 330, 587 P.2d 1144]; see *People v. McGavock* (1999) 69 Cal.App.4th 332, 339-340 [81 Cal.Rptr.2d 600] ["[E]xperienced trial judges, unlike lay jurors, are well familiar with the possible risks inherent in accomplice testimony."].)

The same observation can be made of magistrates conducting preliminary examinations. As the Court of Appeal in this case observed, "The fact finder at a preliminary hearing is a magistrate, not a jury. A judge, unlike a jury, is presumed to be able to avoid the risks of prejudice" posed by testimony of limited or questionable value. Our holding may allow admission at the preliminary examination of qualified officer testimony regarding an accomplice's confession, but we leave it to the magistrate in each case to decide the weight to be given to that testimony, based on such considerations as the circumstances surrounding the confession, the relative reliability of its source, and the extent to which it is corroborated.

Committing magistrates, of course, should continue to treat with care and caution an accomplice's statements that incriminate the defendant, whether admitted directly or through the hearsay testimony of a qualified law enforcement officer. (See *People v. Guiuan, supra*, 18 Cal.4th at p. 569; *People v. McRae, supra*, 31 Cal.2d at p. 186.) Care and caution regarding accomplice statements are especially appropriate if the accused lacks opportunity to cross-examine the accomplice regarding his or her incriminatory statements. But we find no reasonable basis for recognizing an exception to *Whitman* in cases involving an accomplice's confession or other incriminating statement. (See also *Ruiz v. Superior Court* (1994) 26 Cal.App.4th 935,

940-941 [31 Cal.Rptr.2d 741] (*Ruiz*) [distinguishing *People v. Campa, supra,* 36 Cal.3d 870].) As stated in *Ruiz*, "*Whitman* instructs us that an opportunity to cross-examine a qualified peace officer [relating accomplice testimony] is sufficient at a pretrial probable cause hearing under United States Supreme Court jurisprudence." (*Ruiz, supra,* 26 Cal.App.4th at p. 941.)

Defendant argues that we should adopt a rule barring hearsay evidence recounting an accomplice's statements, at least to the extent those statements are not specifically disserving to the accomplice's interests. (See *People v. Leach* (1975) 15 Cal.3d 419, 441 [124 Cal.Rptr. 752, 541 P.2d 296] (*Leach*).) In *Leach*, we were concerned with Evidence Code section 1230, which had created a hearsay exception for declarations against interest. Observing that the reliability of such statements was limited to that portion of the statement that was indeed "disserving to the interests of the declarant," we held the hearsay exception inapplicable to collateral, nondisserving assertions within the declaration. (*Leach, supra,* 15 Cal.3d at p. 441.) Significantly, in *Leach*, we noted that our construction of the statute was made "[i]n the absence of any legislative declaration to the contrary." (*Ibid.*) In the present case, however, the framers of Proposition 115 adopted a broad hearsay exception applicable to all preliminary examination testimony presented by a qualified law enforcement officer. We decline defendant's invitation to adopt a more restrictive construction of the measure seemingly inconsistent with its plain meaning.

In short, we find no basis in the language of Proposition 115 as construed by *Whitman*, or in the federal decisions applying confrontation clause principles, for creating an "accomplice confession" exception to the general rule permitting admission of hearsay evidence at preliminary examinations. Defendant cites one case, *Kentucky v. Stincer* (1987) 482 U.S. 730 [107 S.Ct. 2658, 96 L.Ed.2d 631] (*Stincer*), applying confrontation principles to a hearing to determine two child witnesses' competency to testify at trial, but nothing in that case supports the view that confrontation rights attach to a pretrial probable cause hearing held to decide whether to hold the defendant for trial. In *Stincer*, the court observed that the distinction between trial and pretrial proceedings was not controlling in that case "because a competency hearing may well be a 'stage of trial.' In this case, for instance, the competency hearing was held after the jury was sworn, in the judge's chambers, and in the presence of opposing counsel who asked questions of the witnesses. Moreover, although questions regarding the guilt or innocence of the defendant usually are not asked at a competency hearing, the hearing retains a direct relationship with the trial because it determines whether a key witness will testify. Further, although the preliminary determination of a witness' competency to testify is made at this hearing, the determination of competency is an ongoing one for the judge to make based on the witness' actual testimony at trial." (*Id.* at pp. 739-740 [107 S.Ct. at p. 2664], fn. omitted.)

*Stincer* also stated that rather than concentrating on the trial or pretrial nature of the competency hearing at issue there, a more "useful" inquiry was whether the proceeding interfered with the defendant's right to cross-examine the child witnesses. (*Stincer, supra*, 482 U.S. at p. 740 [107 S.Ct. at pp. 2664-2665].) Defendant suggests this language indicates the high court's willingness to apply confrontation principles to *any* stage of a criminal proceeding in which defendant lacks the right to cross-examine his accusers. We do not read *Stincer* that broadly. In the present case, by reason of Proposition 115 and the nature of the probable cause hearing, defendant had a right to cross-examine Detective Lillienfeld, a right that he exercised. He will also have the right to cross-examine Canela at *trial*, should Canela testify against him. But he had no right to cross-examine Canela at the preliminary examination, because Canela did not testify in that proceeding. We think it doubtful the high court would extend the right of confrontation to the out-of-court statements of accomplices admitted in the course of a probable cause hearing.

Defendant argues that it is unfair, and a violation of his confrontation rights, to permit him to be held for trial on the basis of statements made by an accomplice not likely to be available for cross-examination at trial by reason of the accomplice's assertion of his self-incrimination privilege. He observes that even probable cause hearings must comprise "a fair and reliable determination of probable cause." (*Gerstein v. Pugh, supra*, 420 U.S. at p. 125 [95 S.Ct. at p. 868].) The argument is speculative, as Canela, who has already been tried and convicted of the offenses for which defendant is also charged (see *People v. Canela* (Super. Ct. L.A. County, 1997, No. VA039704), might well testify at defendant's trial. Moreover, the self-incrimination privilege is a two-edged sword, both hurting and helping defendant, for if Canela successfully invokes it at defendant's trial, his extrajudicial confession implicating defendant would be inadmissible hearsay at that trial. (See, e.g., *Lilly, supra*, 527 U.S. at pp. 132-138 & fn. 5 [119 S.Ct. at pp. 1898-1900].)

Although the contents of Canela's confession may afford probable cause to detain defendant pending trial, the prosecutor must ultimately rely on evidence other than these out-of-court statements to obtain a conviction. As the prosecutor candidly observed to the magistrate in this case, if Canela refuses to testify at trial, "I don't have a case against the other defendants [but] . . . I may be able to develop it . . . at a later point in time."

Defendant also contends that use of Canela's confessions to establish probable cause at the preliminary examination violates federal and state due process principles by allowing the prosecutor to admit inherently untrustworthy hearsay statements at the preliminary examination. We reject the

contention. As we observed in *Whitman,* new Penal Code section 872, subdivision (b), makes "no broad grant of authority to the prosecutor to rely on hearsay evidence," but instead "merely specifies a further, limited exception to the general hearsay exclusionary rule of Evidence Code section 1200, by allowing a probable cause finding to be based on certain hearsay testimony by law enforcement officers having specified experience or training." (*Whitman, supra,* 54 Cal.3d at p. 1082.) But Proposition 115 imposes no requirement that the underlying hearsay evidence itself be reliable or trustworthy. Instead, the measure provides the defendant with opportunities at the preliminary examination to cross-examine and evaluate the testimony of a qualified law enforcement officer relating single-level hearsay, and to call specified defense witnesses to rebut the prosecution's case. As the Court of Appeal in this case concluded, "These procedures adequately ensure fact-finding reliability, and provide the defendant with all the process that is due."

In light of our holding in *Whitman* and the protections afforded by Proposition 115 as construed in that case, we find no reasonable basis for holding that Canela's confessions are, as to defendant, *and for purposes of their use at a preliminary examination,* inadmissible hearsay violating the confrontation or due process clauses of the state or federal Constitution.

## CONCLUSION

We conclude that Detective Lillienfeld's testimony at defendant's preliminary examination as to Canela's statements was admissible under *Whitman, supra,* 54 Cal.3d 1063, and Proposition 115. The decision of the Court of Appeal so holding is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.