106 Cal.Rptr.2d 829 (2001)
89 Cal.App.4th 122
The PEOPLE, Plaintiff and Appellant,
v.
Yong WANG, Defendant and Respondent.
No. B139328.
Court of Appeal, Second District, Division Three.
May 17, 2001.
Review Granted September 12, 2001.
*831 Gil Garcetti, District Attorney, George M. Palmer and Shirley S.N. Sun, Deputy *832 District Attorneys, for Plaintiff and Appellant.
Geragos & Geragos and Mark J. Geragos, Los Angeles; Wolff, Ellis & Clausen, Gregory R. Ellis, San Francisco, and Joan Wolff, for Defendant and Respondent.
*830 ALDRICH, J.
The People appeal the superior court's order setting aside an information and dismissing their case against respondent, Yong Wang. Wang was charged in a one-count information with grand theft by embezzlement (Pen.Code, § 487, subd. (b)(3))[1] from his former employer, American Huachen International. After a preliminary hearing, the magistrate held Wang to answer. Wang moved in the superior court to set aside the information, urging the magistrate had improperly considered testimony by an investigating detective that related statements of the company's chairman of the board. The company's office manager had translated the chairman's statements from Mandarin Chinese to English, and the detective had testified to the statements as translated. Wang contended, inter alia, that although Proposition 115 allowed hearsay testimony at preliminary hearings, multiple hearsay was inadmissible. He argued that the translation of the statements created a second level of hearsay, making the deputy's testimony inadmissible. The superior court set aside the information and dismissed the case, finding no showing the translator was competent and that the magistrate had improperly relied upon inadmissible hearsay.
We reject Wang's contention that the translation of the statements created an additional level of hearsay. We also find the circumstances surrounding translation of the statement were sufficient to establish the translation was reliable, and there was no evidence suggesting the interpreter had a motive to mistranslate. Accordingly, we reverse the superior court's order setting aside the information and dismissing the case.

FACTUAL AND PROCEDURAL BACKGROUND

1. Evidence adduced at the preliminary hearing.

On December 1, 1999, a preliminary hearing was held regarding the embezzlement charge against Wang. The sole witness at the hearing was Deputy Sheriffs Detective Jose Pena, a peace officer for 25 years. Based upon Pena's investigation and his interviews with English-speaking witnesses, Pena testified to the following. American Huachen International, a Chinese-owned company, was in the business of importing and reselling machinery and power tools in the United States. The company's offices were located in Cerritos. Respondent Wang was the company's president. Harrison Guan was the company's office manager. David Fan, also known as Guo Fan, was the chairman of the board. Two Chinese companies had formed American Huachen International and were the sole shareholders.
As president, Wang was entitled to a salary, paid housing and a company car. He was not entitled to bonuses. Wang was in charge of the company's operations, including overseeing sales, handling money, opening bank accounts, managing revenues, and reporting to the shareholders in China.
Guan eventually "discover[ed] evidence that [] Wang had been diverting assets of the corporation." In particular, Wang had established an account at Sanwa Bank, in the name of "A.H.I. Industries, Incorporated," *833 to which he and his wife were the only signatories. Approximately 12 companies had paid for American Huachen International merchandise with checks made out to A.H.I. and deposited into Wang's Sanwa account. These companies believed they were dealing with American Huachen International. The deposits into the A.H.I. account exceeded $165,000. Guan represented that Wang did not have authority to establish the bank account. Pena had no information regarding whether the account was eventually closed or became dormant.
Wang had also rerouted delivery of six shipments of power tools from China, worth approximately $350,000, away from the company's offices. Based upon interviews with shipping personnel and examination of the relevant paperwork, Pena determined that the six shipments had been addressed to American Huachen International's Cerritos office, but instead Wang had ordered them delivered to a warehouse on Bandini Boulevard in the city of Bell.
When the corporation discovered the existence of the A.H.I. bank account and the warehouse deliveries, the corporation terminated Wang's employment. Fan assumed Wang's position as president.
Pena interviewed Fan. Because Fan spoke Mandarin Chinese and Pena did not, Guan contemporaneously translated Fan's statements. Fan, speaking through Guan, indicated: (1) Fan was unaware the Sanwa account had been established until after the fact; (2) Fan was unaware shipments of tools were being made to the Bandini Boulevard warehouse; and (3) Wang's actions of opening the bank account, including his wife as a signatory on the account, depositing American Huachen International accounts receivable into the account, and rerouting delivery of merchandise had been undertaken without Fan's knowledge and without Fan's or the corporation's authority.
In defense, Wang attempted to show he had opened the bank account because he had been given a 40 percent interest in the corporation in lieu of payment of salary. Wang produced a memorandum from the board of directors, and corporate minutes purportedly transferring 40 percent of American Huachen's stock, or $200,000, to Wang. The minutes purportedly bore Fan's signature. Pena admitted he had never seen documentation that Wang was actually paid any salary.
Through Guan, Fan told Pena that Fan had never seen and had not signed the documents purportedly transferring the 40 percent interest to Wang. According to Fan, the transfer of shares to Wang had never occurred.
At the preliminary hearing, Wang objected to the admission of any translated statements by Fan. He argued Guan was not a licensed interpreter, there was no evidence Guan was an adequate translator, and Pena's testimony about Fan's statements was multiple hearsay. The magistrate asked Pena, "Did it appear that your questions were being answered? Were there logical responses to your questions?" Pena replied, "Yes ... They were both Chinese. [Guan] spoke English and Chinese, and the other one just Chinese." Pena stated he knew both Guan and Fan spoke Mandarin Chinese. However, Pena did not test Guan's ability to interpret; ask Guan whether he had interpreted or translated before; ask whether Guan had ever been certified to translate in a court; or ask whether Guan had ever testified in court regarding his ability to translate. The magistrate overruled Wang's objections, noting that Guan had acted "just as a [language] conduit."
*834 The magistrate held Wang to answer. The People filed a one-count information alleging Wang committed grand theft by embezzlement (§ 487, subd. (b)(3)[2]), while an agent, servant and employee of America Huachen International, and unlawfully took money and personal property from the company exceeding $150,000. (§§ 12022.6, subd. (a)(2), 1203.044, and 1203.045.)

2. Superior court's dismissal of the People's case.

Wang filed a motion to set aside the information and dismiss the case pursuant to section 995, subdivision (a)(2), on the ground he was committed without probable cause.
The superior court granted the motion and dismissed the case pursuant to section 1385. While the superior court agreed the statements need not have been translated by a certified translator, it found the preliminary hearing record lacked any evidence Guan was a competent translator. Accordingly, it held Fan's statements were improperly admitted. It found that, apart from Fan's translated statements, the evidence was insufficient, because "[t]he entire basis of this transcript is inadmissible hearsay."

CONTENTIONS
The People contend: (1) the translation of Fan's statements did not create a level of hearsay; (2) admission of the translated statements at the preliminary hearing did not violate Wang's constitutional rights; (3) the evidence presented at the preliminary hearing was sufficient to demonstrate the translation was accurate, and the superior court erred by concluding otherwise; and (4) the evidence was sufficient, either with or without consideration of Fan's translated statements, to hold Wang to answer.
Wang asserts the superior court's ruling was proper. He argues that: (1) an out-of-court translation of a witness's statement creates a level of hearsay; thus, the magistrate improperly admitted and relied upon inadmissible double hearsay when holding him to answer; (2) the use of double hearsay at a preliminary hearing violated his confrontation clause rights; (3) Guan was not competent to interpret, both because he was biased and because the People failed to establish his ability to accurately translate; and (4) in the absence of Fan's translated statements, the evidence was insufficient to hold him to answer.

DISCUSSION

1. Applicable legal principles.

The question of whether an investigating officer may testify to out-of-court statements made by a witness through an interpreter is currently pending before the California Supreme Court.[3] Pending further guidance on the issue from our Supreme Court, we decide the issue in accord with existing principles of law.
Subject to certain recognized exceptions, hearsay evidence is inadmissible at trial. (Evid.Code, § 1200.) As a result of the passage of Proposition 115 in 1990, however, some hearsay evidence is admissible *835 at preliminary hearings in criminal matters. (Cal. Const., art. I, § 30, subd. (b); Pen. Code, § 872, subd. (b); Evid. Code, § 1203.1.) Pursuant to section 872, subdivision (b),[4] a "probable cause determination at a preliminary examination may be based on out-of-court declarants' hearsay statements related by a police officer with certain qualifications and experience. [Citation.]" (People v. Miranda (2000) 23 Cal.4th 340, 348, 96 Cal.Rptr.2d 758, 1 P.3d 73.) Section 872, subdivision (b) thus provides a limited exception to the general rule excluding hearsay evidence. (Whitman v. Superior Court (1991) 54 Cal.3d 1063, 1082, 2 Cal.Rptr.2d 160, 820 P.2d 262; People v. Miranda, supra, at p. 354, 96 Cal.Rptr.2d 758, 1 P.3d 73.) Under Proposition 115, "a qualified law enforcement officer [may] relate single-level hearsay ... if the officer had sufficient knowledge of the crime or the circumstances under which the out-of-court statement was made so as to provide meaningful assistance to the magistrate in assessing the reliability of the statement." (People v. Miranda, supra, at p. 348, 96 Cal.Rptr.2d 758, 1 P.3d 73, citing Whitman v. Superior Court, supra.) Likewise, Evidence Code section 1203.1 creates a "preliminary examination exception to the general requirement that all hearsay declarants be made available for cross-examination. [Citation.]" (People v. Miranda, supra, at p. 348, 96 Cal.Rptr.2d 758, 1 P.3d 73.)
Proposition 115, however, created an exception for single-level hearsay only; multiple hearsay remains inadmissible at a preliminary hearing, as at trial, unless each "layer" of hearsay falls within a separate hearsay exception. Whitman v. Superior Court, supra, 54 Cal.3d at pages 1072-1073, 2 Cal.Rptr.2d 160, 820 P.2d 262, held it was impermissible for a testifying officer to merely relate the contents of another officer's police report at a preliminary hearing, where the testifying officer had no personal knowledge of the circumstances surrounding the crime and had not been involved in the investigation. The court found the testifying officer must have had sufficient knowledge of the crime or circumstances of the statements "so as to meaningfully assist the magistrate in assessing the reliability of the statement." (Ibid.) This knowledge requirement, coupled with section 872(b)'s experience and training requirements, sufficiently assured the reliability of hearsay testimony at preliminary hearings. (Id. at pp. 1073, 1077-1078, 2 Cal.Rptr.2d 160, 820 P.2d 262.) Otherwise, "to allow testimony by noninvestigating officers or readers would seemingly sanction a form of double or multiple hearsay beyond the contemplation of the framers of, and voters for, Proposition 115. [Citation.]" (Id. at p. 1074, 2 Cal.Rptr.2d 160, 820 P.2d 262; e.g., Montez v. Superior Court (1992) 4 Cal.App.4th 577, 586, 5 Cal.Rptr.2d 723 ["multiple level hearsay is inadmissible at a preliminary examination even when offered by an otherwise qualified investigating officer"]; People v. Wimberly (1992) 5 Cal.App.4th 439, 442, 6 Cal. Rptr.2d 800.)
Wang contends Fan's statements embraced two levels of hearsay: first, the out-of-court statements by Fan to Guan; *836 and second, Guan's translation of the statements to Pena. Because multiple hearsay is inadmissible at a preliminary hearing unless each layer of hearsay falls within a hearsay exception (Evid.Code, §§ 1200, 1201), Fan's statements were inadmissible if the translation created an additional layer of hearsay.

2. Use of an interpreter to translate out-of-court statements of a witness does not create a second layer of hearsay.

People v. Torres (1989) 213 Cal. App.3d 1248, 262 Cal.Rptr. 323 (hereinafter "Torres I"), held that an interpreter's contemporaneous translation of a declarant's statements did not create a layer of hearsay. In Torres I, a Spanish-speaking defendant gave a voluntary statement to an English-speaking police sergeant; another officer translated. At trial, the prosecution introduced the sergeant's testimony regarding what the defendant had said. The interpreting officer testified at trial to his qualifications as an interpreter and to the accuracy of the translation. The defense objected that the sergeant's testimony regarding the translated statements was hearsay, because the sergeant testified not to the defendant's actual statements, but to the translations made by another officer.
The court held the statements were not barred by the hearsay rule. (Torres I, supra, 213 Cal.App.3d at p. 1259, 262 Cal. Rptr. 323.) "[W]hen a declarant makes an out-of-court statement through an interpreter, and that statement is otherwise admissible, the hearsay rule does not bar a percipient witness other than the interpreter from testifying to the content of the out-of-court statement, even though the witness testifies to the words uttered by the interpreter, not the declarant." (Id. at p. 1251, 262 Cal.Rptr. 323.) The court explained its holding was "based on the theory of agency, whereby the interpreter's statements are regarded as the statements of the declarant who willingly used the services of the interpreter." (Id. at p. 1252, 262 Cal.Rptr. 323.) The court explained, "[w]hen two persons speaking different languages select an interpreter as a medium of their communication, the interpreter is regarded as their joint agent for that purpose. Therefore, the statements of the interpreter `are regarded as the statements of the persons themselves....' [Citations.]" (Id. at p. 1258, 262 Cal.Rptr. 323.) When this is the case, "`the interpreter's statements are virtually the extra-judicial admissions of the party's agent, and thus are receivable, from anyone who heard them, without calling the interpreter.' [Citation.]" (Ibid., fn. omitted.) "`Where ... there is no motive to mislead and no reason to believe the translation is inaccurate, the agency relationship may properly be found to exist. In those circumstances the translator is no more than a "language conduit," [citation] and a testimonial identity [exists] between declarant and translator....' [Citation.]" (Id. at p. 1259, 262 Cal.Rptr. 323.) Accordingly, the court found the statements were admissible as authorized admissions under Evidence Code section 1222. (Ibid.)
Torres I distinguished and criticized a line of early California cases holding that out-of-court statements given through an interpreter were inadmissible hearsay unless the translator or some other witness who understood the statements of the declarant testified. (People v. John (1902) 137 Cal. 220, 69 P. 1063; People v. Ah Yute (1880) 56 Cal. 119; People v. Lee Fat (1880) 54 Cal. 527.) In those early cases, the prosecutor had attempted to admit at trial evidence of the defendants' statements given through interpreters at prior court proceedings. The testimony was inadmissible hearsay because the reporter *837 had transcribed the statements from the interpreter, not directly from the defendant. Torres I distinguished John, Ah Yute, and Lee Fat on the basis that in those cases, the interpreters were officers of the court and were not specifically selected by the parties who desired to communicate with each other, and thus no agency relationship existed. (Torres I, supra, 213 Cal.App.3d at pp. 1257-1259, 262 Cal.Rptr. 323.) The court also criticized the holdings "of these ancient cases," (id. at p. 1260, 262 Cal.Rptr. 323), finding their reasoning brusque and their holdings "unrealistic and unworkable." (Ibid.)
Numerous other federal and state courts have concluded, like Torres I, that an interpreter's contemporaneous translation does not create an additional layer of hearsay if the interpreter can be regarded as an agent of the declarant or a mere language conduit. (E.g., United States v. Beltran (1st Cir.1985) 761 F.2d 1, 9; U.S. v. Koskerides (2d Cir.1989) 877 F.2d 1129, 1134-1135 [interpreter is "no more than a language conduit" and translation does not create an additional layer of hearsay]; U.S. v. Cordero (5th Cir.1994) 18 F.3d 1248, 1253 [except in unusual circumstances, interpreter is language conduit]; U.S. v. Nazemian (9th Cir.1991) 948 F.2d 522, 527 [translated statements should be considered those of the speaker where the translator has sufficient capacity and no motive to misrepresent]; United States v. Alvarez (11th Cir.1985) 755 F.2d 830, 859-860 [where translator was agent of defendant, translator was language conduit, and translated statement was admissible as an authorized admission]; State v. Patino (Ct. App.1993) 177 Wis.2d 348, 502 N.W.2d 601, 608-610 ["Absent a motive to mislead, distort or some other indication of inaccuracy ... when persons speaking different languages rely upon a translator as a conduit for their communication, the statements of the translator should be regarded as the statements of the persons themselves without creating an additional layer of hearsay"]; People v. Gutierrez (Colo.App.1995) 916 P.2d 598, 600 [adopting Nazemian analysis].)
We find persuasive the reasoning of Torres I and the federal and sister state opinions concluding a contemporaneous translation does not create a second level of hearsay, and is admissible unless the circumstances negate the presumption of agency or indicate unreliability. The translator, acting as the agent of the speaker, is merely a language conduit. The speaker, not the translator, is the source of any factual statement or opinion. While a translated statement of a non-testifying witness would be inadmissible at trial unless it fell within a recognized hearsay exception, Proposition 115 creates such an exception for preliminary hearings. Absent circumstances suggesting the translation itself is inaccurate or suspect, see discussion infra, we find no reason to conclude that translated out-of-court statements should be treated differently than other out-of-court statements for purposes of a preliminary hearing.
Furthermore, unlike the situation in which a "reader" officer testifies at a preliminary hearing, Pena was the investigating officer. He was present and personally interviewing Fan when Guan contemporaneously translated the statements. Pena could personally observe Fan's demeanor and body language, including any pauses, facial expressions, hesitation, and the like, giving him a reasonable opportunity to judge the credibility of Fan's statements. Pena was obviously able to ask follow-up and clarifying questions if necessary. Thus, Pena was able to use his training and experience to assess Fan's translated statements and accurately describe the circumstances to the magistrate.
*838 We note that in Torres I, and most of the cases considering this issue, the defendant was the declarant, whereas here the translated statements were those of a witness. However, we believe the conceptual basis articulated in Torres I and the other cases is equally applicable regardless of whether the defendant or another witness is the declarant. The distinction, of course, is significant in that if the declarant is the defendant, the translated statement may be admitted as an authorized admission, whereas if a non-testifying declarant is not a party, the out-of-court statement may be admitted at a preliminary hearing only pursuant to Proposition 115 (and at trial only if it falls within some other exception to the hearsay rule).
For example, in Torres I, the court noted that the statement could come in under Evidence Code section 1222, the "authorized admission" exception to the hearsay rule. (Torres I, supra, 213 Cal.App.3d at p. 1259, 262 Cal.Rptr. 323.) When the witness is not a party, Evidence Code section 1222 is not applicable. Otherwise, however, the distinction is not conceptually significant. The theory articulated by Torres I and other courts is that, because the parties have chosen to communicate through an interpreter, that interpreter is their agent and a mere language conduit for them, and "a testimonial identity" exists between the declarant and translator. (Ibid., quoting United States v. Da Silva (2d Cir.1983) 725 F.2d 828, 832.) This theory is equally applicable whether it is the defendant or another witness who engages the interpreter.
The few cases considering the application of this doctrine with regard to third party statements made through an interpreter have reached the same conclusion. For example, in U.S. v. Koskerides, supra, a government agent testified at trial regarding out-of-court statements made to him by the defendant's father-in-law, a nonparty witness, through an interpreter. Neither the interpreter nor the defendant's father-in-law testified at trial. The Second Circuit held that "[t]he interpreter was no more than a language conduit and therefore his translation did not create an additional layer of hearsay. [Citation.]" (877 F.2d at p. 1135.)
Likewise, in State v. Patino, supra, 502 N.W.2d at pages 608-610, a witness to an aggravated battery made out-of-court statements to an interviewing officer through a translator. Both the translator and witness were unavailable at trial. The trial court nonetheless admitted the interviewing officer's testimony regarding the witness's translated statements. (Id. at p. 606.) It found the witness's statement to the translator fell within the excited utterance exception to the hearsay rule. (Id. at p. 608.) It further reasoned that, although the hearsay exception for party admissions was inapplicable, the translation did not create a layer of hearsay, regardless of the fact the speaker was a witness rather than the defendant. (Id, at pp. 608-610.)
We agree with the logic of these cases, and find the fact Guan translated Fan's statements did not create a second level of hearsay.

3. Admission of the translated statements did not violate Wang's confrontation clause rights.

Wang suggests that an officer's recitation of translated statements at a preliminary hearing violates a defendant's confrontation clause rights. He contends that when such translated statements are admitted, a defendant is deprived of the opportunity to meaningfully cross-examine the individual who hears the statements of the witnesses firsthand. We disagree.
As noted, Whitman v. Superior Court held that under Proposition 115, at a preliminary *839 hearing a qualified officer may relate single-level hearsay if he or she has sufficient knowledge of the crime or the circumstances to assist the magistrate in assessing the statement's reliability. (Whitman v. Superior Court, supra, 54 Cal.3d at p. 1074, 2 Cal.Rptr.2d 160, 820 P.2d 262.) Our Supreme Court has recently reiterated that "the right to confrontation is `"basically a trial right"' [and] testimony by a qualified law enforcement officer ... relating single-level hearsay is, as to the defendant, admissible as against hearsay, confrontation clause, and due process objections." (People v. Miranda, supra, 23 Cal.4th at pp. 350-351, 96 Cal.Rptr.2d 758, 1 P.3d 73, original italics.) Whitman observed that reliability was amply guaranteed because "`... the experience and training requirements of [Penal Code section 872] help assure that the hearsay testimony of the investigating officer will indeed be as reliable as appropriate in light of the limited purpose of the preliminary hearing.... [Citation.] Although the underlying reliability of the ... witness may remain untested until trial, we think the evaluation and cross-examination of the testimony of the qualified investigating officer provides sufficient basis for a pretrial probable cause determination.' [Citation.]" (Id. at p. 349, 502 N.W.2d 601, quoting Whitman v. Superior Court, supra, at p. 1078, 2 Cal.Rptr.2d 160, 820 P.2d 262.) Because a contemporaneous translation by a speaker's agent does not create an additional level of hearsay, the same is true here. As our Supreme Court recently noted, "the framers of Proposition 115 adopted a broad hearsay exception applicable to all preliminary examination testimony presented by a qualified law enforcement officer. We decline defendant's invitation to adopt a more restrictive construction of the measure seemingly inconsistent with its plain meaning." (People v. Miranda, supra, at p. 352, 96 Cal.Rptr.2d 758, 1 P.3d 73.)
Wang additionally relies upon People v. Torres (1985) 164 Cal.App.3d 266, 210 Cal. Rptr. 375 (hereinafter "Torres II"[5] in support of his argument that admission of the translated statements violated his constitutional rights. In Torres II, translated transcripts of tape recordings of conversations were admitted at trial over defense objection. There was no evidence that a certified court interpreter translated the conversations. The court found that Evidence Code sections 750[6] and 751[7] required "the administration of a precisely formulated oath to any person who is to act as an interpreter" in a criminal proceeding. (Id. at p. 269, 210 Cal.Rptr. 375.) It also noted that Evidence Code section 753[8], governing translators of writings, required that the translator be sworn. The court found that the failure to call the original translator to the witness stand denied the defendant the opportunity to cross-examine the translator regarding his or her qualifications and the accuracy of *840 the translation, in violation of his right to confront witnesses. (Id. at p. 269, 210 Cal.Rptr. 375.) However, it found the error harmless. (Id. at pp. 269-270, 210 Cal.Rptr. 375.)
We find Torres II distinguishable. That case dealt with specific provisions of the Evidence Code governing translation of testimony and writings which were admitted into evidence at trial, not at a preliminary hearing. As we have noted, a defendant's confrontation right is basically a trial right. Pena was present during, and was an active participant in, the interview with Fan, and was able to reliably gauge whether the contemporaneous translation was accurate. Likewise, as discussed infra, the circumstances surrounding the translation were sufficient to indicate reliability. Wang was able to meaningfully cross-examine Pena regarding the circumstances under which the out-of-court statements were made.
Thus, we find admission of the translated statements did not violate Wang's confrontation clause rights. We next turn to the question of whether there were sufficient indicia of reliability to allow admission of Fan's translated statements.

4. The magistrate did not err by concluding the translations were sufficiently reliable.

When ruling on a motion pursuant to section 995, a superior court "`"sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer. [Citation.]" [Citations.]'" (People v. Daily (1996) 49 Cal.App.4th 543, 549, 56 Cal.Rptr.2d 787; Salazar v. Superior Court (2000) 83 Cal.App.4th 840, 842, 100 Cal.Rptr.2d 120.)
As noted, in order for translated statements to be properly admissible, the circumstances must indicate the statement is reliable, and must not negate the presumption of agency. The circumstances must indicate that the declarant understood the interpreter's role and spoke freely through the interpreter. (Torres I, supra, 213 Cal.App.3d at p. 1259, 262 Cal.Rptr. 323.) As explained in Torres I, "[f]actors tending to refute such an inference include a substantial possibility that the interpreter had a motive to misrepresent, such as an interest in shifting suspicion to the accused and away from the interpreter, or a lack of capacity or demonstrated incompetence on the part of the translator. [Citation.]" (Id. at p. 1258, 262 Cal.Rptr. 323.) Federal courts examining the question have held that factors going to this determination include: (1) which party supplied the interpreter; (2) whether the interpreter had any motive to mislead or distort; (3) the interpreter's qualifications and language skill; and (4) whether actions taken subsequent to the conversation were consistent with the statements as translated. (E.g., U.S. v. Martinez-Gaytan (5th Cir.2000) 213 F.3d 890, 892; U.S. v. Nazemian, supra, 948 F.2d at p. 527.) Such an inquiry is a question of fact, to be evaluated in the totality of the circumstances. (Torres I, supra, at p. 1259, 262 Cal.Rptr. 323.) The factors considered by Torres I and the federal decisions are not all-inclusive. If the facts and circumstances presented by the proponent of the evidence point to the translation's reliability, the burden is on the opponent of the evidence to show the translator was incompetent or had a motive to mistranslate.
*841 Here, the evidence was sufficient to support a finding the translation was accurate and reliable. The first Nazemian factor, which party supplied the interpreter, is not particularly probative in this instance because the alleged victim, rather than either party, supplied the interpreter. In any event, this factor is not dispositive. (U.S. v. Nazemian, supra, 948 F.2d at pp. 527-528.)
Second, the record suggests Guan had no motive to mistranslate. Guan was employed by American Huachen International, and worked for Fan. Thus, his interests were presumably allied with Fan and the company, and he would have had no motive to translate Fan's statements inaccurately.
Wang urges that the fact Guan was an employee of the victim company suggests he had a motive to shade Fan's statements to favor the company. We disagree. First, we reject the notion that simply because the translator is related to the victim, he or she is necessarily "biased" and will translate inaccurately. To the contrary, presumably a translator affiliated with a victim has a strong motive to tell the truth so that the crime is investigated efficiently and the perpetrator, rather than an innocent person, is punished. Here, there may have been ill will between Wang, on the one hand, and Fan and American Huachen, on the other, in that a settlement agreement and pending civil litigation involving them was mentioned at the preliminary hearing. However, the credibility of Fan's and the corporation's recitation of the relevant facts was a question for the magistrate's determination. Even assuming the corporation or Fan was hostile to Wang, these facts in no way suggest Guan had a motive to mistranslate Fan's statements. While a translation may be found suspect if, for example, the translator has a motive to shift blame away from himself or herself, the record before us does not suggest such a motivation here.
As to the third factor, the circumstances indicated Guan had sufficient language skills to render an adequate translation. There was no demonstrated incompetence or lack of ability to translate, nor does Wang contend Fan's statements were in fact mistranslated. Guan was the Chinese office manager of a Chinese-owned corporation operating in California. Pena had spoken to him previously and knew Guan spoke both Mandarin Chinese and English. Pena was in a good position to judge Guan's ability to speak English, and would surely have realized if Guan was unable to communicate adequately in English. Pena received appropriate answers to his questions. The facts presented through Fan's testimonythat Wang lacked authority to open the account and divert the shipments, that no stock transfer occurred, and that the signature on the corporate minutes was not Fan'swere fairly straightforward, and the inculpatory value of the statements was not dependent upon subtle distinctions in the precise wording used. Moreover, Fan apparently spoke some English; Pena stated that Guan was translating because "Mr. Fan [did not] speak very good English." Given that Fan apparently spoke some English, he would have been able to correct Guan had Guan distorted Fan's statements. (U.S. v. Lopez (2d Cir. 1991) 937 F.2d 716, 724 [where defendants spoke English, it was reasonable to assume they would have corrected translator had she distorted conversation]; People v. Gutierrez, supra, 916 P.2d at p. 601 [reliability of translation bolstered where officer was able to speak broken Spanish and drug dealer was able to speak broken English].) While the record admittedly could have been fuller regarding such facts as how long Guan had been speaking Mandarin and English, how often he spoke each *842 language, and the like, the magistrate could reasonably infer from the facts presented that Guan's linguistic abilities were sufficient to ensure reliability.
The fourth Nazemian factor considers whether actions taken subsequent to the translated conversation were consistent with the translated statements. (E.g., U.S. v. Garcia (9th Cir.1994) 16 F.3d 341, 344 [drug delivery was consistent with earlier conversation]; People v. Gutierrez, supra, 916 P.2d at pp. 599-601 [procedure for carrying out drug deal, discussed during translated conversation, was subsequently followed].) Here, the record does not disclose whether Pena, Guan, and Fan discussed future plans which were subsequently carried out. However, we find other corroborating evidence bolstered the validity of the translation. Fan's statement that Wang lacked authority to open the bank account was corroborated by Guan's direct statement to the same effect. Likewise, the fact that Wang's employment was terminated after the company discovered the bank account and diverted shipments also indirectly corroborated Fan's statements that Wang had acted without authorization from the company.
We do not suggest that all translated statements are automatically admissible. A showing that an officer received answers to his or her questions, with nothing more, is likely to be insufficient to establish reliability. Likewise, where the facts suggest the translator was incompetent or motivated to mistranslate, reliability may not be shown. However, here the magistrate could properly infer from the circumstances, including Guan's position with the company, Pena's prior contact with Guan, and the corroborating evidence, that Guan possessed sufficient ability to translate. While it is preferable if the investigating officer obtains fuller information regarding the translator's abilities, on the record before us we conclude the magistrate did not err by finding sufficient evidence of reliability.

5. The evidence was sufficient to hold Wang to answer, and thus the superior court erred by setting aside the information and dismissing the case.

A magistrate at a preliminary hearing determines whether the prosecution's factual showing establishes probable cause to believe the defendant committed a felony. "`"`An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.'"' [Citations.] The test is a limited one: whether there is such a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. [Citation.] If the test is met, the magistrate must hold the defendant to answer. [Citation.]" (People v. DeJesus (1995) 38 Cal.App.4th 1, 14-15, 44 Cal. Rptr.2d 796, original italics.) We review the evidence to determine whether, as a matter of law, it was sufficient, not whether the superior court's ruling was reasonable. (Salazar v. Superior Court, supra, 83 Cal.App.4th at p. 842, 100 Cal.Rptr.2d 120.) "Ordinarily, if there is some evidence in support of the information, the reviewing court will not inquire into its sufficiency. [Citations.] Thus, an indictment or information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged. [Citations.]" (Ibid.) The required showing may be made through circumstantial evidence supporting the magistrate's reasonable inferences. (Ibid.) "[T]he showing required at a preliminary hearing is exceedingly low." (Id. at p. 846, 100 Cal.Rptr.2d 120.)
*843 Here, the evidence, including Fan's translated statements, was sufficient to give rise to such a strong suspicion. The evidence showed Wang diverted a portion of American Huachen International's accounts receivables into an unauthorized account, an account to which both he and his wife were signatories. Moreover, he diverted large shipments of goods to a warehouse other than the company's location. Both these actions were unknown and unauthorized by management; Wang's employment was terminated as soon as the company discovered his conduct. Furthermore, Fan's denial of knowledge of the document purportedly transferring 40 percent of the company's shares to Wang undercut Wang's defense. We find these facts were sufficient to support the information, and therefore the superior court erred by setting it aside.

DISPOSITION
The superior court's order setting aside the information and dismissing the case is reversed. The matter is remanded for further proceedings consistent with this opinion.
KLEIN, P.J., and CROSKEY, J., concur.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] The information alleged Wang had committed grand theft by embezzlement in violation of "Penal Code section 487(A)(4)." This was apparently a clerical error, as the relevant statute is Penal Code section 487, subdivision (b)(3).
[3] Correa v. Superior Court (2000) 84 Cal. App.4th 631, 101 Cal.Rptr.2d 242, review granted January 24, 2001, S093476; Valero v. Superior Court, review granted January 24, 2001, S093477.
[4] Section 872, subdivision (b) provides: "Notwithstanding Section 1200 of the Evidence Code, the finding of probable cause may be based in whole or in part upon the sworn testimony of a law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted. Any law enforcement officer testifying as to hearsay statements shall either have five years of law enforcement experience or have completed a training course certified by the Commission on Peace Officer Standards and Training which includes training in the investigation and reporting of cases and testifying at preliminary hearings."
[5] The Torres I and Torres II cases are unrelated. However, for simplicity's sake we have referred to them herein as Torres I and Torres II.
[6] Evidence Code section 750 provides: "A person who serves as an interpreter or translator in any action is subject to all the rules of law relating to witnesses."
[7] Evidence Code section 751 provides, in pertinent part, that an interpreter or translator shall take an oath that he or she will make a true interpretation or translation.
[8] Evidence Code section 753 provides in pertinent part: "(a) When the written characters in a writing offered in evidence are incapable of being deciphered or understood directly, a translator who can decipher the characters or understand the language shall be sworn to decipher or translate the writing."